Pullins' Admr. v. Smith.

---

CASE 49—ACTION ON COMPROMISE AGREEMENT—APRIL 22.

## Pullins' Administrator v. Smith.

APPEAL FROM MADISON CIRCUIT COURT.

1. ADMINISTRATORS—POWER TO COMPROMISE.—Before a compromise entered into by a personal representative of claims against his decedent will be enforced by a court of equity it must appear either (1) that the compromise was authorized in advance by the court, or (2) the nature of the claim must be so definitely alleged that the court can determine that the effected compromise was beneficial to the estate, and a proper one for the personal representative to make in the exercise of a reasonable discretion for the protection of the interests committed to him.

2. SAME—PLEADING.—A pleading asserting such a claim is defective

Pullins' Admr. v. Smith.

if it fail to allege with particularity the time and terms of such alleged compromise.

W. I. WILLIAMS FOR THE APPELLANT.

1. Before the defendant can maintain its action upon the set off the claim must have been presented to the administrator verified in the manner provided by law. Warfield v. Gardner's Admr., 79 Ky., 583; Swift Iron & Steel Works v. Schulte, 8 Ky. Law Rep., 787; Usher's Exrs. v. Flood, 12 Ky. Law Rep., 721.

2. An allegation of a transaction with an intestate in his life-time made in a bill against his administrator is not to be taken as assumed because it is not answered by the administrator. Ball v. Townsend, Litt. Selec. Cas., 325.

J. TEVIS COBB AND J. A. SULLIVAN FOR THE APPELLEE.

1. As the reply to the defendant's answer was not made a part of the record, this court will presume that the action of the lower court in refusing it to be filed was proper; and in the absence of such reply, the allegations of the answer must be taken as true.

2. In the absence of a reply showing that the claim set up in the answer was not properly verified, this court must assume that it was verified as required by law. Thomas' Exr. v. Thomas, 15 B. M., 177; 19 Ky. Law Rep., 97; Nutall's Admr. v. Brannin's Exr., 5 Bush, 11; Rogers v. Mitchell, 1 Met., 22; Terrell v. Rowland, 86 Ky., 79-80; Warfield v. Gardner's Admr., 79 Ky., 583.

3. The case of Ball v. Townsend, Litt. Selec. Cas., 325, relied on by counsel for the appellant has no application whatever to this case. That decision was not the common law, has never been followed by this court, and is contrary to the provisions of our Code, which states that every material allegation of a pleading must be taken as true unless specifically traversed. Civil Code, sec. 126.

4. The case of Usher's Exrs. v. Flood, 12 Ky. Law Rep., 72, is not in line with the facts of this case. In that case the point was made before judgment, and it appears that no verification as required by law had been made. See also Holland v. Lowe's Admr., 19 Ky. Law Rep., 97.

5. The defense set up in the answer was not a claim against the estate of decedent. The gravamen of the answer is that the defendant had had a claim against the decedent which had been liquidated by compromise with the administrator.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Appellant brought suit in equity against appellee, ask-ing a personal judgment on a note for $852.65 executed by appellee to his intestate for a tract of land, and to enforce the lien on the land retained in the deed to secure its pay-ment. After admitting the execution of the note, the de-fendant, in his answer, set up the following defense in bar of the action: "Further answering, defendant says that when this action was instituted in the Madison Cir-cuit Court, and prior thereto, this plaintiff's intestate, the said Alva Pullins, was indebted to this defendant in a large amount of money, for services rendered by this de-fendant to the said intestate from the year 188— to the year 18—, inclusive, at the said intestate's special instance and request; that the said Pullins, by an instrument of writing duly signed and executed, and recorded in the Garrard Circuit Clerk's office, engaged his said services, and prom-ised to pay him therefor a reasonable compensation; that, at the time of the institution of this action, he still owed him a large amount of money; that this defendant, on the ——— day of ———, 1896, presented the said claim to this plaintiff, as administrator of the said Alva Pullins; that it was distinctly agreed, by and between this plaintiff and defendant, then and there, that the said claim was valid and just, and that, in payment and settlement of same, this note and interest sued on in this action should be paid and canceled, and the said lien retained to secure its pay-ment should be released, and plaintiff was to pay to this defendant $400 additional, or apply same to the cancella-tion and payment of a note held by Harrison Burnam's committee, and upon which an action has been instituted in this court; and that, as a further consideration for the said settlement of the defendant's said claim against the

said intestate in the manner aforesaid, this defendant was
to release the said Alva Pullins as security on about a
$1,900 note to B. L. Price, and on about a $1,100 note to
James Estill.

"He says that he has complied with the terms of the said
settlement by releasing the said Alva Pullins as security
on the said note of this defendant to B. L. Price, and by
releasing the said Alva Pullins as security on the said note
to James Estill; and that he has in every respect complied
with the terms of said settlement, and that the said ad-
ministrator has failed to release the said lien and pay the
said $400."

It will be observed that appellee does not allege what
services he rendered the intestate, or what they were
worth, or what he had been paying him; and, from all that
appears in the pleadings, only a nominal sum may be due
him, if anything.   He does not allege that he was insol-
vent, or that there was any danger of the intestate's estate
losing anything as his surety, or that he expended anything
in securing its release on the notes referred to.   So, for all
that appears, the personal representative, for a nominal
consideration, released the debt, amounting to about $1,-
200, and assumed, in addition, a liability of $400 for the
estate.

Appellant moved the court to require the blanks in the
plea to be filled.   This the court refused to do—and as
we think, improperly.   For it, at least, would have given
some idea of the nature of the claim, more than is con-
veyed by the pleading as it stands.   The personal repre-
sentative had no knowledge of these facts, and it was
peculiarly important to him to have the blanks filled, that
he might properly understand what he was to answer.

After overruling appellant's motion that the blanks in

the plea be filled, the court gave appellant ten days to file a reply. He did not file his reply in the time allowed, and when he subsequently tendered it the court refused to allow it to be filed, on the ground that it was not tendered in time; and, the action being then submitted, gave judgment in favor of appellee, canceling the note sued on, and requiring appellant to pay the $400 above referred to. The reply tendered by appellant is not made a part of the record, and so the only question before us is, did the allegations of the answer which we have quoted above warrant the judgment?

In Clay v. Williams, 2 Munf., 105, [5 Am. Dec., 453], it was held that: "A court of equity will not assist in carrying into effect compositions of claims by executors or other fiduciaries, unless the party praying it will first unfold and disclose the whole circumstances of the case to the court, that it may see there has been no fraud and that everything was fair." And, on page 460 [5 Am. Dec.], the court say that "such compositions are not favored in equity." And the appellant was refused relief because he failed to show "the particulars on which such composition is founded." This case only applies a well-known rule of equity scrutinizing the acts of fiduciaries, and never enforcing their contracts against those they represent, unless "within the range of a reasonable discretion as to the true interests of the estate." Schouler, on Executors, sec. 298.

For all that appears in this case, the administrator was guilty of a *devastavit* in making the alleged agreement. He had no power to waste the estate of his intestate; and, if he did agree to waste it, a court of equity will not enforce his contract against the estate. In order that this alleged contract may be enforced in a court of equity, it must be shown that it was to the interest of the estate, and a

proper one for the executor to make, in the exercise of a reasonable discretion, for the protection of the interests committed to him.

Pursuant to the principles above referred to, our statute provides: (Kentucky Statutes, sec. 3882): "In actions for the settlement of decedents' estates, the court may direct the sale of choses in action, including judgments, and may authorize the personal representative to compromise claims growing out of contract or tort due the estate, as well as claims on contract or tort against the estate; and a personal representative may compromise and settle any claim or demand for damages growing out of injury to or the death of the decedent."

In Bitteler v. Bitteler's Adm'r, 13 Ky. Law Rep., 368, an administrator agreed with one who was surety for the intestate to release him from liability on the notes, in consideration of his paying a debt due the estate by another. It was held that the administrator had no power to bind the estate by such an agreement, and that, though he might be liable personally for the amount so paid, the estate was not.

It is not averred that the alleged compromise was authorized by the judgment of the court, and it clearly should not have been enforced, unless facts were alleged sufficient to authorize the court to direct the compromise to be made if presented to him before it was made. Geigers v. Kaigler, 9 S. C., 401.

Equity never lends its aid to the enforcement of contracts unless they appear fair. This doctrine is peculiarly applicable to suits against fiduciaries: In Pomeroy on Contracts, section 180, the rule is thus stated:

"Contracts whose provisions, if carried into operation, would constitute or require a breach of trust by the party

performing ............... will never be specifically enforced by a court of equity.................If the agreement does not involve any actual breach of trust, still a court of equity is always reluctant to enforce an agreement against trustees which may injuriously affect their interests or those of their beneficiaries."

On the return of the case to the lower court, appellee will be allowed to fill the blanks in his answer and amend his pleading, if he desires to do so; appellant will then be allowed a reasonable time to file reply.

Judgment reversed, and cause remanded, for further proceedings in conformity to this opinion.