CASE 3.—ACTION BY MARY C. WRIGHT, A MARRIED WOMAN, AND OTHERS AGAINST THE DAVIESS COUNTY BANK & TRUST COMPANY TO HAVE COLLATERAL NOTES, PLEDGED AS SECURITY, ADJUDGED RELEASED.—May 12.

## Daviess County Bank & Trust Co. v. Wright, &c.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals—Reversed.

1. Husband and Wife—Disabilities of Coverture—Suretyship.— A married woman executing a note as surety is not personally bound.

2. Same—Action by Wife—Property of Wife—Pleading—Construction Against Pleader.—Where, in an action by a married woman, who had executed a note as surety and pledged notes as collateral, to have the collateral notes adjudged released, she alleged that she was the owner of the notes, and that the

same had been executed to her as part consideration for the conveyance of land which she had owned, construing her petition most strongly against her it must be assumed, either that the notes were her separate property, and therefore within her sole power to pledge to secure the debt of another notwithstanding her coverture, or, if her general estate, that her husband assented to their being so pledged.

3. Same—Disabilities of Coverture—Contracts—Pledge.—As at common law the so-called protection of the feme covert from liability on her executory contracts, so as to relieve her general estate pledged to secure their execution, was in reality out of consideration of the husband's martial rights where he assents to the pledge, she will not be heard to complain, as he would have the right, without her consent, to have reduced it to his possession and so applied.

4. Pledges—Notes as Collateral Security — Discharge. — Notes pledged as collateral security will be released under the same circumstances as surety personally bound.

5. Principal and Surety—Discharge of Surety—Extension of Time for Payment.—A surety will be presumed to have been prejudiced by an extension of time to the principal, and the presumption is conclusive, if, but for such extension, he would be entitled to discharge the indebtedness and sue and recover judgment against the principal debtor.

6. Novation—Nature.—A novation is the making of a new contract, its elements being essentially the same as in the first contract, which are, parties, a meeting of the minds, and a consideration.

7. Principal and Surety—Discharge of Surety—Extension of Time for Payment.—An extension of time to the principal for payment, to release the surety, must be for a definite time, and based on a new consideration.

8. Same—Indorsement on Note as Extension of Time.—An indorsement on a note: "Extended 360 days to Feb. 6, 1905. Interest $150, paid Sept. 30, 1904"—stands no higher as evidence than any other written memorial, and is impeached, as establishing an extension of time to the principal, so as to discharge the surety, where there was no agreement to extend the time of payment for a definite time, and the indorsemnet was by mistake of the bank official, whose real aim was to make it appear that the note was not overdue, in order that the bank might not be required to charge it off to profit and loss, by action of the public authorities charged with examination of the bank.

9. Same—Powers of Administrator.—An administrator is without

power to bind the estate by an agreement under which the time of payment of a note, executed by decedent, is extended, and such agreement cannot therefore operate to discharge a surety on the note.

10  Indemnity—Consideration.—Indemnitors, whose contract is not coincident with the principal obligation, are not bound, where there is no other consideration for it.

HAYES & JOHNSON for appellant.

## SYNOPSIS AND LIST OF AUTHORITIES.

1. Positions assumed as settled.

(ab) The pledge of collaterals as security by the appellee, Mrs. Wright, a married woman, was valid although she was not personally bound. (Ky. St., 2127; Wirgman v. Miller, 98 Ky., 620; N. Y. Life Ins. Co. v. Miller, 22 Ky. Law Rep., 230.)

(b) The property pledged stands in the relation of a surety. (Colebrook Collateral Securities, 2 Ed. 426.)

2. Was there an agreement to extend the time of payment?

(a) The essentials of such an agreement. (Brandt on Suretyship, 3 Ed., sec. 376.)

(b) The receipt of interest in advance not ipso facto an extension of time. (Stearns on Suretyship, 118; 7 Cyc., 890; Brandt on Suretyship, 3 Ed. sec. 386; Preston v. Henning, &c., 6 Bush, 556.)

(c) The minds of the parties must meet in a contract to extend the time, or else there is no extension and no release of a surety. (Weaver v. Prebster, (Ind.) 77 N. E., 673.)

(d) The evidence examined in support of the proposition that it fails to establish a contract of extension.

3. The administrator had no power to bind the estate by an agreement for extension.

(a) The petition fails to show any such power and indeed fails to allege that Malcom Thompson's estate was bound by such an agreement.

(b) Administrators have no power to bind the estate of their decedents by contracts. (Page on Contracts, vol. 2, sec. 992; 18 Cyc., 881; Moody v. Ewing, 8 B. Mon., 521; Heasley v. Dunn, 5 B. Mon., 145; Proctor v. Terrill, 47 Ky. (8 B. Mon.) 451; Ellis' Administrator v. Merriman, 5 B. Mon., 296; Pullins' Admr. v. Smith, 106 Ky. 418; 50 S. W. 833; 20 Ky. Law Rep., 1903 (Citing Ky. St. sec. 3882 and Bitteler v. Bittelers' Admr., 13 Ky. Law Rep., 368); Rice, &c. v. Strange, 72 S. W., 756.)

(c) If any agreement for extension was made, it did not bind

Malcom Thompson's estate, but only the administrator personally.

4. Irrespective of the power of the administrator generally to bind the estate of his decedent, no such power exists in this case, because the administrator had invoked the jurisdiction of the chancellor for the settlement of the estate, and therefore could not bind the estate in the absence of authority from the court.

(a) West v. Brison, (Mo.) 13 S. W. 95, distinguished; Jackson v. Michie, 33 La. Ann. 723, referred to as in line with above position.

5. Where, as in this case, there is legal impossibility of injury to the surety from an extension, the surety is not released.

(a) Plaintiff's bill shows that she could not have been injured, and therefore shows a want of equity. The principles on which sureties are released are "not a mere shadow without substance." (6 How. 283, (12 L. Ed. 437.)

(b) Cessante Ratione, cessat ipsa lex; 2 Dan. Neg. Inst. sec. 1313; Ibid, sec. 1319; Revel v. Thrash (N. C.), 44 S. E., 596.)

6. Plaintiff entitled to recover against appellees, Hawes and Thompson.

(a) A third party for whose benefit a contract is made with another may sue directly upon it. (Blakely, &c. v. Adams, 68 S. W., 393; Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340; Dodge's Admr. v. Moss, &c., 82 Ky., 440; Munday v. Munday, &c., 21 L. R. 693.)

(b) Appellees not released by an extension. (1st), because they do not plead or rely on the extension; (2nd), because by their obligation they became principals to Mrs. Wright. (Brandt on Suretyship, 3 Ed., sec. 1); (3rd), because the appellant did not know of their suretyship (27 Am. Eng. Encyc., 2 Ed, 505.)

(c) On the plea of no consideration, there is ground for the contention (not insisted upon) that the writing is binding although executed subsequently to the original note and without additional consideration. (6 Am. Eng. Law. 2 Ed., 694; 16 Ibid, 173.)

(d) On the plea of no consideration the burden of proof is on the defendants (appellees.) (Brown v. Ready, 14 Ky. Law Rep., 583.)

(e) The evidence of appellees, Hawes and Thompson, incompetent. (Civil Code of Prac., sec. 606, subsec. 2.)

LA VEGA CLEMENTS for appellee Mrs. Mary C. Wright.

POINTS AND AUTHORITIES.

1. Appellant, bank, is estopped from escaping the consequences of its act of receiving the interest and making said extension of

time, by saying the administrator had no power to make such contract.

2. Nor can appellant bank, escape the disastrous result of said reception of interest and extension of time by saying that Mrs. Wright was in no wise injured by such extension, because such is not the law, and again because her rights were impaired by such extension.   (Levy v. Roth, &c., 103 S. W., 293.)

3. Mrs. Wright was released as surety by said bank receiving the interest on said note and extending the time of payment thereon, and there was a contract expressed or implied by which said bank did extend the time of payment of said note.   (Robinson, &c. v. Miller, 2 Bush, 179; Preston v. Henning & Speed, 6 Bush, 566.)

4. There was a sufficient consideration to uphold the writing executed by Thompson and Hawes to indemnify Mrs. Wright by reason of her suretyship and pledge of collateral notes; and the writing itself stated the consideration which is not impeached in this record.

5. The continuing existing liability of Mrs. Wright as surety, together with her collateral notes was a sufficient consideration of itself for the execution of the indemnifying contract by Hawes and Thompson, even though it was executed subsequent to the execution of the original note.   (Williams v. Sillman, (Texas) 12 S. W., 534; Vol. 9 Cyc., p. 362; Vol. 12, 2nd Ed., A. & E. of Law, p. 173.)

6. On the face of the pleadings the burden of proof of no consideration was on appellees, Thomspon and Hawes.   (Brown v. Ready, 14 Ky. Law Rep., 583.)

7. There is no competent evidence in the record to sustain the plea of no consideration on the part of Thompson and Hawes, and the lower court should have sustained exceptions and their entire depositions.   (Civ. Code Prac., 606; Northrip's Admr. v. Williams, &c., 30 Ky. Law Rep., 1279; Black v. McCarley's Ex'r, 104 S. W., 987.)

WILFRED CARRICO for J. L. Thompson and GEORGE W. JOLLY for W. S. Hawes.

### SUMMARY.

1. If Mrs. Wright is released by reason of the extension of the time of payment, then Thompson and Hawes are, for that reason, released.

2. Although Mrs. Wright may not be released, Thompson and Hawes are nevertheless not bound, because there was never any consideration for their undertaking.

3. The want of consideration is admitted by Mrs. Wright and by her attorney, and is proven by the testimony of Thompson and Hawes, who were competent witnesses.

4. The burden of proof to show consideration, was upon Mrs. Wright and the bank.

We respectfully submit that Thompson and Hawes are not bound and ask this court to so adjudge.

### ADDITIONAL AUTHORITIES RELIED ON.

1. No consideration. (Am. & Eng. Ency. of Law, vol. 6, 691, 692 and notes; Mason & Co. v. Collins, 9 Ky. Law Reporter, 578.)

2. Burden of proof. (Bullitt v. Ralson, 1 A. K. Mar. 331 side page; Mason & Co. v. Collins, 9 Ky. Law Reporter, 578; Am. & Eng. Ency. of Law, vol. 14, 1135; L. & N. R. R. Co. v. Literary Society, 13 Ky. Law Rep., 5; Howard v. Corneilson, 5 Ky. Law Reporter, 905; Noe v. Keene, 5 Ky. Law Reporter, 928.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

Malcolm Thompson borrowed $2,500 from the appellant bank on February 12, 1903 on which date he executed to it a note, signed by appellee Mary C. Wright as surety, in which she pledged as collateral certain real estate notes belonging to her. The note was due 12 months after date, but was not then paid, the principal having died September, 1903, without having paid it. About a month after the execution of the above-named note appellees Hawes and Thompson, to indemnify Mrs. Wright in her suretyship for Malcolm Thompson, executed to her this obligation: "Owensboro, Ky., Feb. 12, 1903. Mrs. Mary C. Wright has this day signed a note with Malcolm Thompson to the Daviess County Bank & Trust Company for $2,500, due 12 months after date, and as collateral to said note she has placed with said bank 10 real estate notes for $500 each and one note for $300 given by G. W. Bell and L. G. Bell, bearing 6

per cent. interest, payable annually, being the unpaid deferred payments for land sold said G. W. Bell and L. G. Bell by Mrs. Mary C. Wright. Part of the money received on the note to Daviess County Bank & Trust Company ($2,000) was paid on account of purchase of land by Malcolm Thompson for Jeff Howard, the deed to said land being made to Malcolm Thompson, and the balance of said note, except the discount retained by the bank, Malcolm Thompson keeps for use in improvements, etc., on said land. We hereby agree to hold Mrs. Mary C. Wright, harmless for signing said $2,500 note for Malcom Thompson and also to pay the $2,500 indebtedness, with all interest and costs, and return the said 11 land notes to her at the maturity of the note. (Signed) Malcolm Thompson. W. S. Hawes. J. L. Thompson.''

In January, 1894, the administrator of Malcolm Thompson's estate brought his suit in equity in the Daviess circuit court to settle the estate of his intestate, procuring an injunction against creditors suing the estate in any other action, and an order requiring them to produce and file their claims against his intestate's estate in that action. Malcolm Thompson's estate was apparently not equal to its indebtedness, and there was paid on the note first named only $1,448.13 in the distribution of the assets. While the suit to settle the estate was pending, and on September 30, 1904, the administrator of Malcolm Thompson paid to appellant bank, at the latter's solicitation, $150. It is claimed by appellees that this payment was for one year's interest on the note, from February 12, 1904, and operated by law to extend the time of payment of the principal till February 12, 1905; and that therefore Mrs. Wright and her collateral pledged to secure the note were released from

further liability to the bank. Upon the facts and the law of the case the circuit court sustained Mrs. Wright's contention, and adjudged that she was not liable, and that her collateral was released from liability to the bank.

Mrs. Wright was a married woman when she executed the note. She was not therefore personally bound upon it. She brought this suit to have her collateral adjudged released from its obligation. She pleaded and relied on her coverture, in bar of her personal liability. But she did not aver that the notes pledged as collateral were her general estate or not her separate estate. She did say she was the owner of the notes, which had been executed to her as part consideration for the conveyance to their obligor of a tract of land which she had owned. Construing her petition, as it must be, most strongly against her (as she would presumably have pleaded the existence of any other facts, concerning the nature of her estate in the matter, that would have released her collateral could she have truthfully done so), we assume, either that the notes were her separate property, and therefore within her sole power to pledge to secure the debt of another notwithstanding her coverture (Bullock v. Comth., 96 Ky. 537, 29 S. W. 341, 16 Ky. Law Rep. 621), or her general estate, that her husband assented to their being so pledged. In the latter event, as we apprehend that at the common law the so-called protection of the feme covert from liability on her executory contracts, so as to relieve her general estate pledged to secure their execution, was in reality out of consideration of the husband's marital rights, he assenting to the pledge, she will not be heard to complain, as he would have had the right, without her consent, to have reduced it to his possession and so

applied it.   Hence we conclude that the question of the liability of the collateral is to be determined without referenc to Mrs. Wright's coverture, but as any other collateral put up to secure the debt by any other person as surety; for we think that, as the collateral is to be treated as security, it will be released under the same circumstances that a surety personally bound would have been released.   Brandt on Suretyship (2d Ed.), sec. 34; Price v. Dime Savings Bank, 124 Ill. 317, 15 N. E. 754, 7 Am. St. Rep. 367; Wirgman v. Miller, 98 Ky. 620, 33 S. W. 937, 17 Ky. Law Rep. 1174; N. Y. Life Ins. Co. v. Miller, 56 S. W. 975, 22 Ky. Law Rep. 230.   It will be conceded that ordinarily any extension of time by the obligee, based upon a consideration, will operate. to discharge a surety not assenting thereto, and by a parity of reasoning will release collateral of a surety or of a third person pledged to secure the debt.

But in order that a surety may be released, there must be an enforceable contract between the principal and the creditor, by which the latter would be prevented from suing on the debt when due, and for that reason the surety be prevented from paying off the debt that day, and thereupon, subrogated to the creditor's rights, sue or take other steps to save himself from loss.   The whole doctrine is necessarily based upon the idea that the surety has been prejudiced in some substantial right which he had, as otherwise there would be no sense in releasing him because of such an act.   It is true the law will presume that he has been prejudiced by such extension, and will conclusively presume the fact if the surety could, but for such extension, have paid off (that is, had the right to pay off) the principal obligation, and have sued and recovered judgment against the principal

debtor upon it.   In no case does mere indulgence of
the principal by the creditor operate to discharge the
surety, even though it be expressly assented to by the
creditor, at the instance of the principal, of which the
surety is ignorant, nor even if the principal has, dur-
ing such indulgence, become bankrupt.   Much less
does the simple agreement of the creditor to indulge
the principal even for a definite time work a release
of the surety.   Though it is sometimes stated that the
payment of interest in advance to the creditor by the
principal operates to discharge the surety, we appre-
hend that, even in such cases, the rule is really rested
upon the contract, implied if not expressed, that the
principal shall have a definite, further time within
which to pay the debt.   The whole question always
comes back to this: Was there a valid contract of
extension?   If there was, then the creditor could not
in violation of it take any action to sue to collect the
debt before the expiration of the time fixed in
the last contract; and as he could not do
so, the surety could not derive such right from
him by paying off the debt when it is due, there-
by lessening it by the amount of interest that a
further extension would entail, as an incident of his
contract of suretyship.   If it is changed without his
assent, there is a novation, so to speak; and if he
should be held in spite of his not agreeing to be so
bound, it would end that he had a contract made for
him, which he did not make and probably would not
have made.   A novation is the making of a new con-
tract.   Its elements are essentially the same as in the
first contract. which are (1) parties; (2) a meeting of
the minds; and (3) a consideration.   Hence the
further indulgence of the principal, if the surety is to
be released thereby, must be upon an agreement for

such extension for a definite time (as, if it were not definite, then the creditor might immediately enforce payment of the debt, and if he might, the surety could pay and be as fully protected as if the agreement had not been made); and this agreement must be based upon a new consideration, as without a consideration the agreement would be unenforceable as against the creditor. Robinson v. Miller, 2 Bush 179. This much has been said that a proper application of the particular facts of this case bearing upon the payment of $150 as interest may be made.

In September, 1904, the note was past due—what the bank termed "suspended paper." The bank was anxious that it be made to appear at least that it was not overdue, in order that it might not be required to charge it off to profit and loss by action of the public authorities charged with periodical examination of the bank. The administrator was applied to, and the situation explained to him. He agreed to pay, and did pay, $150 upon the note. There was nothing said between the administrator and the bank official conducting the transaction, as to any definite time when the remainder was to be paid. They each knew that the principal was dead, and that no other action could be taken, before February 12, 1905, by either the bank or the surety, to collect the note from the estate of the principal. It was discussed that the estate would, as soon as it could, pay off the balance, or as much as it might be able to pay. The bank official, however, in crediting the $150, using a rubber stencil, and filling out with pen and ink, made this indorsement on the note: "Extended 360 days to February 6, 1905. Interest $150 paid September 30, 1904." It is argued for appellee that this is conclusive that interest was collected in advance from the principal, in considera-

tion of which further indulgence was granted to him for a definite time, without the consent of the surety. Were this indorsement all the evidence on this point we would have no hesitation in holding that the fact was as claimed; but this indorsement stands no higher as evidence than any other written memorial. It is impeached as being the result of mistake. Certainly there is no evidence (other than the indorsement) that the contracting parties had so agreed; and they in their testimony concur that such was not the agreement. Nor is it sound that the mere payment of $150 as interest on September 30, 1904, operated, ipso facto, to discharge accrued interest at 6 per cent. from February 12, 1904 (the day the note was due), and the remainder of the $150 then operated to extend the time of payment, for such additional period, as at 6 per cent. per annum interest it would buy. If the payment of $150 interest only were shown, it would still be open to explanation whether it was a usurious rate for the past indulgence, or to be applied partly for past and partly for future. The most natural inference would be, it is true, that the latter course was intended, but such inference is a matter of evidence, and not a presumption of law. We think the fact was established that there was no agreement to extend for a definite time; that the indorsement was by the mistake of the bank official, whose real aim was not to extend the time, but to create an appearance contrary to the actual transaction, and for a purpose wholly beside this case. Without pausing to reflect upon the nature of his motive it is sufficient, we think, that it had no bearing upon the alleged agreement; and, as the question is, was there a meeting of the minds of the parties as indicated by the indorsement? We must find that there was not.

But we deem the more important and controlling question in the case to be, had the administrator power to bind the estate by an agreement for extension? Obviously, if there was no such agreement, the question could not arise. While we are strongly inclined, as argued above, to hold that there was not an agreement, we are not quite willing to rest there. Administrators, and executors, too, for that matter, are officers of the court, appointed to settle decedents' estates. In this State administrators have not the authority to enter into contracts on its behalf, in the absence of an order of a court of competent jurisdiction, or, where they act under a will, of something in that instrument empowering them to do so, except by statute in certain rare instances not here involved.

Schouler, in his article on "Executors and Administrators," 18 Cyc. 881, thus states the prevailing rule: "Contracts of executors and administrators, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration moving between their promisee and themselves, are their personal contracts, which do not bind the estate, and they must be sued on these contracts in their individual and not in their representative capacity." This court has, in line with the rule of law just quoted, held that an administrator had not the power to bind his intestate's estate by charging and receiving usurious interest on its behalf against its creditor (Heasley v. Dunn, 5 B. Mon. 145); nor to discharge a debtor of the estate by compromise, except as allowed expressly by statute (Pullins' Admr. v. Smith, 106 Ky. 418, 20 Ky. L. R. 1993, 50 S. W. 833); nor to release a surety rpon a note owing the estate, even upon a consideration that might have supported such an agreement as between others competent to con-

tract about the matter. Bitteler v . Bitteler's Adminis-
trator, 13 Ky. Law Rep. 368. And in Rice v. Strange,
72 S. W. 756, 24 Ky. Law Rep. 1945, it was held that
an executor had not the power to borrow money on
behalf of the estate (there being nothing in the will
authorizing it), even though the estate may have been
benefited thereby. An agreement to extend the time
of payment of a debt owing by the estate is, in a
sense, incurring additional liability against it. The
statutes allow a suit at any time by the personal rep-
resentative or any creditor or heir-at-law to settle the
estate, and to distribute its assets. Upon the filing of
such a suit the chancellor directs the administration
henceforth. It is not competent, then, for the personal
representative, unauthorized by the court, to enter
into contracts by which its jurisdiction and control in
the matter might be ousted, and the statutory rights
of other litigants or claimants be changed or post-
poned. As the administrator was without power in
this case to enter into the alleged contract extending
the maturity of the note, the agreement would have
been void. Hence the surety, notwithstanding it was
entered into as claimed, might have disregarded it,
and paid off the debt at any moment.

There is a further question whether, in any event,
the surety was prejudiced by the so-called agreement,
had it been a valid one, but it is not now necessary
to pass upon that point. The indemnitors, Hawes
and Thompson, were never bound upon their contract
if it was not executed coincidentally with the principal
obligation, as it is not claimed that there was other
consideration for it. For if Mrs. Wright had already
become bound (or her notes pledged, which is the
same in principle) upon Malcolm Thompson's debt to
the bank, when the agreement of indemnity was

entered into, then she undertook nothing additional, parted with nothing, being moved thereto by the undertaking of Hawes and Thompson. Their agreement must have a consideration of its own to support it. There is none in this case, unless it was contemporaneous with Mrs. Wright's pledging her notes, and her agreement to do so was based, in part at least, upon that fact. Whether it was executed when or after Mrs. Wright became bound was not decided by the circuit court. That question will be for decision upon the return of the case. The whole purport of that agreement of indemnity was to indemnify Mrs. Wright, not to otherwise pay the debt.

For the reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent herewith.