## Magruder, et al. v. Ericson.

(Decided January 5, 1912.)

### Appeal from Shelby Circuit Court.

1. **Equity Practice—Exceptions to Commissioner's Report.**—A party complaining of a commissioner's report which allows debts against a decedent's estate, should point out specifically the errors upon which he complains, and if he does not do so by exception or pleading in the lower court, his complaint will not be heard in the Court of Appeals.

2. **Interest—When It Will Be Allowed.**—The modern rule is, that interest runs as a matter of right on a liquidated demand, and in

the case of an unliquidated claim, the allowance of interest rests in the discretion of the jury or of the court trying the case.

3.  Contract—Discharge of.—Where a husband and his wife jointly owned a farm, which they rented to appellee under a partnership contract, whereby appellee was to work the farm and pay off a mortgage debt thereon, and the wife subsequently died leaving her interest in the farm to her husband for life, and by mutual consent the husband and appellee continued the partnership contract, the contract was not terminated by the death of the wife or the final payment of the mortgage debt; it continued until the death of the husband.

4.  Partnership Contract.—Where a partnership contract is of doubtful meaning the courts are inclined to give it that construction which the partners themselves had given it.

L. A. HICKMAN. and E. B. BEARD for appellants.

P. J. BEARD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

George C. Magruder and his wife, Kate Magruder, jointly owned a small farm of 45 acres of land, in Shelby County, upon which there was a mortgage debt of about $1,700. Recognizing the fact that they were growing old; that their indebtedness was so heavy that they might never be able to pay it, and that the farm might be sold for that purpose, they made the following contract with the appellee, Lars Ericson, to wit:

"Whereas, we the undersigned, George C. Magruder and Kate Magruder, his wife, of Shelby County, Kentucky, own a tract of land in this county hereinafter described, and whereas, the said George C. Magruder is indebted in a large amount to-wit, $1,700, more or less to the Shelby Loan Company, and others, which we are anxious to pay; and, whereas, our kinsman and friend, Lars Ericson, of said county, and State, has undertaken to pay off this debt and the others, and to provide for us the reasonable comforts of life, all of us to live together on the same farm and mutually assist each other by labor, management and otherwise, and the net proceeds to be applied to the reduction and final payment of said debts:

"Now, in order to save the said Ericson harmless and protect him for any sum or sums so paid, or to be paid on said debts, we, George C. Magruder and Kate Magruder, convey, transfer and place in lien to him, the said Ericson, the said tract of land to the extent of all sums

that he has heretofore advanced, or may hereafter advance toward the payment of said debts.

"This land is situated on the waters of Guess Creek, and Benson turnpike, and is bounded as follows: (Description omitted.)

"It is understood and agreed that all sums paid from the proceeds of the farm on said debts, shall be considered as paid by said Ericson and for which the lien exists.

"TO HAVE AND TO HOLD, to the said Lars Ericson, and his heirs and assigns forever, and the said Lars Ericson accepts the terms hereof, and agrees to use every reasonable effort to provide, with the assistance of said Magruder and wife, a home with the usual comforts for them, and to pay off said debts.

"WITNESS our hands this August 1st, 1898.

"G. C. MAGRUDER,
"KATE MAGRUDER,
"LARS ERICSON."

Under this contract Ericson, whose wife was a niece of George C. Magruder, took charge of the farm, and continued to work it in connection with some neighboring land which he rented, and gradually reduced the indebtedness.

Mrs. Magruder died in 1906, leaving a will by which she gave her husband, George C. Magruder, all of her real and personal property for life, with remainder to Elizabeth Ericson, wife of appellee, and the heirs of her body during their lives, with power to testatrix's husband, George C. Magruder, to dispose of it by will.

George C. Magruder died in 1909, leaving a will, in which he recognized the lien given to Ericson to reimburse him for all debts and sums he had paid, or should pay, under the contract above set out and devised the farm equally to his seven nieces and nephews. Ericson was appointed administrator with the will annexed of Mrs. Magruder, and also executor of George C. Magruder's will. In October, 1910, he brought this suit, in his own right as creditor and as administrator with the will annexed of Kate L. Magruder, deceased, and as executor of George C. Magruder, deceased, against the devisees under the will of George C. Magruder seeking a settlement of his said trust; a sale of the land for the payment of the debts against the estate of George C. Magruder, and a distribution of the balance of the proceeds of the sale among the owners thereof.

Between August 1st, 1898, and September 12th, 1904, Ericson made eight payments upon the mortgage debt, the first one being for $374.64, and the last for $694.93, which discharged that debt. In addition thereto, Ericson paid $75.20, balance due on the funeral expenses of Mrs. Magruder, after crediting her estate with a small amount of personal property then on hand; and he also paid four other items aggregating $433 by way of substantial repairs to the barn, orchard, silo, and for other improvements upon the farm. In addition to these items, he also paid taxes, and the funeral expenses of George C. Magruder, amounting to $111.23. All of these payments were allowed as charges against the farm under the contract above set out, and interest was allowed upon the payments made upon the mortgage part of the debt from the dates of the several payments. By an agreed judgment, the farm was sold in November, 1910, for $4,-117.50, and out of that sum the debts were ordered to be paid.

The appellants, who are the distributees under the judgment, make four objections to the judgment of the circuit court.

1. It is first contended that the judgment allowed Ericson $40 more than should have been allowed him under the proof. Under a reference of the action to the commissioner to advertise and report upon the claims against the estate, the commissioner not only fixed Ericson's debt for the four small items of improvements to the farm at $453 instead of $433, but, in addition thereto, he failed to charge Ericson with $20, which Ericson admitted was the value of certain personal estate of George C. Magruder for which he had not accounted; and, it is claimed these two items, making $40 should have been set off against Ericson's debt against the estate.

There was some contention by appellee to the effect that $20 of this amount had been paid by him for cementing cow stalls in the barn, but the evidence fails to show that fact. Furthermore, appellee contends that the commissioner allowed these two claims of Ericson because he had made no charge for winding up the estate of either of the Magruders, and that his fees would have amounted to more than these items. It is probable that some such arrangement was understood at the time the case was heard by the circuit court, since there are no exceptions to the report on debts, questioning the propriety of allowing Ericson credit for one of these items, or failing

to charge him with the other. The only exception filed by the appellants to the report on debts was, that the contract did not permit Ericson to assert the full amount of his claims paid under the contract, but that a proper construction thereof would require an off-set against Ericson's claim equal to the rental value, less the expense of running the farm. There was no claim made by the exception, or by pleading, that the debts allowed therein were not proper charges against the Magruder estate, or that, Ericson should have been charged with the small amount of personalty left by George Magruder. If there had been such an exception, no doubt proof would have been taken thereon, and the claim thereby established, or rejected by the lower court.

But the error was not brought to the attention of the court in any way, not even by the brief for appellants in the circuit court, which has been copied into the record. These minor errors are urged in this court for the first time.

In Henderson's Chancery Practice, section 456, which relates to the method of attacking a finding of fact by the master, it is said:

"Proper practice in equity requires that exceptions to the report of a master should point out specifically the errors upon which the party relies, not only that the opposite party may be apprised of what he has to meet, but that the master may know in what particular his report is objectionable, and may have an opportunity of correcting his errors or reconsidering his opinions. Cases are referred to a master, not on account of his assumed superior wisdom, but to economize the time and labor of the court, and as exceptions are usually filed to his report, if they are so general as to require a rehearing of the entire case, there is really nothing saved by a reference. A party complaining of the finding of a master 'must put his finger on the point of which he complains.' If he does not do so no court of review can regard it. The rules upon this subject are tending rather to increased strictness, and not at all to relaxation. They have their foundation in a just regard to the fair administration of justice, which requires that, when an error is supposed to have been committed, there should be an opportunity to correct it at once, before it has had any consequences; and does not permit a party to lie by without making his objection, and take the chances of success

on the grounds on which the judge has placed the cause, and then, if he fails to succeed, avail himself of an objection which, if it had been stated, might have been removed."

As above stated, this objection is made here for the first time, and we are asked to reverse the cause for an alleged small error which, if it was an error, could and would have been quickly corrected by the lower court, if its attention had been called thereto. The interests of justice compel us to decline to do so. The objection should have been formally and specifically stated and taken in the lower court; and the appellants having failed to make it there, it is too late to make it here.

2. Whenever Ericson would make a payment upon the mortgage debt he would take a formal receipt from Magruder reciting the fact of payment, and that Ericson was entitled to a re-payment thereof, with interest, and a lien therefor, under the contract between them. Such a receipt calling for interest was taken for the last seven items paid upon the mortgage indebtedness, but the recital as to interest was omitted from the first receipt for $374.63, which reads as follows:

"Received from Lars Ericson the sum of $374.64; $238.39 of which he has expended in the payment of my debts, and the residue $136.25 in improvements upon the farm, and for which total sum $374.64 the said Ericson is hereby given a lien upon said farm as specified in a separate contract and deed of even date herewith.

"WITNESS MY HAND, this August 1st, 1898.
"G. C. MAGRUDER."

It is contended that the $374.64 called for by this receipt should not bear interest from the date of payment, but only from the date of its allowance in this action, under the well known rule of law that before a claim can bear interest it must be liquidated and due at a time certain. Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky., 668. The debt, however, is not only liquidated and certain, but it is evidenced by a writing which, in effect, shows that it was enforcible at any time.

In L. & N. R. R. Co. v. Commonwealth, 29 Ky. Law Rep., 669, we said:

"The rule is now that interest runs as a matter of right on a liquidated demand, and in the case of an unliquidated claim, the allowance of interest rests in the discretion of the jury or of the court trying the case."

Furthermore, the claim was liquidated by the receipt and fixed as a charge against the land under the original contract. The mortgage debt which Ericson paid was itself an interest-bearing debt against Magruder, and the other seven receipts recite the fact that the seven similar payments should bear interest from the date of those receipts. Under these circumstances we think it is clear, not only that Ericson was entitled to interest upon the other payment, but that the parties contemplated that he should be so paid. There was certainly no good reason why Ericson should lift from Magruder's shoulders an interest-bearing obligation, for which Ericson held a lien, and then be refused interest upon the amount which he had thus paid. We think the lower court properly allowed interest upon all payments made by Ericson in discharging the mortgage debt. Furthermore, the commissioner's report on debts specifically allowed this debt with interest, and no exception was taken to the report for so doing. Under the rule above laid down, the objection comes too late when made here for the first time.

3. It is insisted that the contract was discharged as to Kate Magruder's half interest in the farm by her death, and that Ericson should have been charged rent for her one-half of the farm after her death, up to the time of his settlement. There is nothing in the contract, however, making such a provision; on the contrary, George Magruder took a life interest in her one-half of the farm; and, according to the explicit testimony of appellee, which was not excepted to, he continued to work her half of the farm under the terms of the contract. George Magruder was then alive, and owned his wife's former interest. Since he made no objection, and there is no testimony whatever contradicting Ericson upon the point that he continued by agreement with George Magruder to work the entire farm under the original contract, the judgment of the lower court upon this point was fully sustained by the evidence.

4. Finally, it is insisted that the contract was discharged by the payment of the mortgage debt on September 12, 1904; that when Ericson had finished paying on that debt, his right to further hold and work the farm ceased under the contract, and that he should be charged with the profits of the farm after September 12, 1904, which was some two years before the death of Mrs. Magruder. Ericson was charged with rent after the death

of George C. Magruder, and in so charging him we think the circuit court carried out both the spirit and the letter of the contract.

Furthermore, as above pointed out, until the death of George C. Magruder in 1909, he was in the rightful possession of the farm and Ericson continued to hold and work the farm until George Magruder's death, with his consent, and under the original contract; and that being true, the judgment of the circuit court correctly fixed Ericson's obligation . under the contract. It merely adopted that construction of the contract which the parties themselves had given it. Meguiar v. Helm, 91 Ky., 24.

Judgment affirmed.