## Larimore et al. v. West.

(Decided December 4, 1928.)

JOHN P. HASWELL for appellants.

FULTON & FULTON and RICHARD P. DIETZMAN for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

H. T. Larimore was a common partner in two firms affected by this litigation. One firm consisted of H. T. Larimore and R. H. West. It operated under the name of R. H. West & Co., and was engaged in the purchase of tobacco from growers. The other firm was the Kentucky Tobacco Warehouse Company, consisting of H. T. Larimore and four other individuals, two of whom bore the name of Larimore. It was engaged in the business indicated by its name, consisting principally of storing tobacco for owners and conducting for them auction sales on commission. West was without capital, but widely acquainted with the tobacco growers, and a competent buyer. H. T. Larimore was to furnish the funds to pay for the tobacco bought by West. It seems to have been the practice for the Kentucky Tobacco Warehouse Company to pay the drafts drawn by R. H. West & Co., for the purchase price of tobacco bought by that firm. The amount advanced was charged on the books of the warehouse company against R. H. West & Co., and the tobacco was shipped to the warehouse company. It held a contractual lien on the tobacco for its advances, charges, and

commissions. When the warehouse company sold the tobacco, it deducted the amount due it, and the balance of the proceeds was credited to R. H. West & Co., and that concern advised of the transaction.

The present controversy was simplified by a stipulation which renders it unnecesasry to trace the steps from which the pending issues are derived. Both parties agree that the appellee is entitled to a recovery; the dispute being as to the amount due him. The problem will be solved by determining whether the Kentucky Tobacco Warehouse Company had a right to charge back to the account of R. H. West & Co. some trade acceptances, given by purchasers for the purchase price of tobacco sold, and taken by the warehouse company. The tobacco sold was in the custody of the warehouse company. When the sale was made, trade acceptances for the purchase price were taken to the Kentucky Tobacco Warehouse Company, discounted by it at a bank, and the proceeds used for its own purposes. R. H. West & Co. were credited with the amount of the trade acceptances, after deduction of the advancements, storage charges, and commissions of the warehouse company. The trade acceptances so discounted were not paid when due, but were renewed from time to time. R. H. West & Co. were not parties to them at any time. After several renewals of the paper, one of the makers became bankrupt and died insolvent, resulting in a loss on the trade acceptances. The warehouse company claims the right to charge that loss back to R. H. West & Co. The basis of the asserted right of the warehouse company to make such charge is: (a) An alleged oral agreement by H. T. Larimore alone, at the time the acceptances were taken, whereby R. H. West & Co. guaranteed payment; and (b) that the transaction and oral agreement were ratified and confirmed by R. H. West. The case was referred to a master, who took the evidence and made a report, which, in the absence of exceptions, was confirmed by the court. The report was favorable to the contention of West, and judgment was entered accordingly. The warehouse company appeals.

It is first suggested that the report of the referee was void because it was not responsive to the order of reference, or within the purview of its authorization. The order of the court committing the case to the commissioner directed him "to setle the accounts of the partnerships referred to in the petition and between the parties

hereto.'' The report of the commissioner shows that his work, as contemplated by the order, was much simplified by a stipulation reducing the controversy to a single transaction, but that transaction was embraced in the order of reference. The fact that the commissioner did not report a settlement of accounts which were not in controversy does not deprive his report of its efficacy as a settlement of the account that was in controversy. The arrangement between the parties was a prudent one, excluding matters not pertinent, and operating to lessen the burden on the parties, the commissioner, and the court. The report of the commissioner responded to all the requirements of the reference not withdrawn, by agreement of the parties, from further consideration. The judgment of the court sustained the finding of the commissioner, and, after judgment, it is too late to bring up questions pertinent only on exceptions seasonably submitted.

It is argued that the report was interlocutory only and under the control of the court until final judgment was rendered. Even so, the court approved the report when it came to render final judgment, and we see no present relevancy of the argument that the report was not final until the judgment was entered by the court. If the court had disregarded the report in whole or in part, and rendered a judgment on the facts found different from that recommended by the report (Adkisson v. Dent, 88 Ky. 628, 11 S. W. 950, 11 Ky. Law Rep. 85), or if the facts found justified a different judgment (Webster v. Cadwallader, 133 Ky. 500, 118 S. W. 327, 134 Am. St. Rep. 470), the argument advanced perhaps would be applicable, but no such case is presented. The case we have here falls within that line of authorities to the effect that, when no exceptions are filed to the report of the commissioner, a judgment pursuant thereto is not reviewable on the facts, since this court, in such situations, reviews only the action of the lower court, which is itself not called upon to search a report of errors not plainly specified by an exception. Magruder v. Ericson, 146 Ky. 89, 141 S. W. 1195; Town of Highland Park v. Wilson, 186 Ky. 233, 216 S. W. 370; Wilson v. Smoot, 186 Ky. 194, 216 S. W. 129; Collins v. Conley, 216 Ky. 582, 288 S. W. 316.

The transaction with reference to the trade acceptances clearly indicated that they were taken and accepted

by the appellants in payment of the account of West & Co., 21 R. C. L. pp. 82-85, secs. 87-89. The paper was made payable to the appellants alone. They immediately negotiated it at the bank, and utilized the proceeds in their own interest and for the benefit of their own business. The account of R. H. West & Co. was promptly credited with the proceeds of the sale as though it had been for cash. The warehouse paid itself storage charges on the tobacco and commissions on its sale. The notice to R. H. West was the usual one, and contained no intimation that cash had not been received on the sale of the tobacco, or that any contingent liability on his part was to be kept alive. The appellants made several renewals of the trade acceptances, always in their own names. But it is claimed that Larimore made an oral agreement with the warehouse company to guarantee payment of the trade acceptances, and that, even if West was not originally bound by such agreement, it was ratified by him. West denies both the agreement and the ratification, and pure questions of fact are thus presented. The evidence was in conflict, and the facts and circumstances were sufficient to justify the commissioner and the court in holding on those isues in favor of West. Indeed, the confirmation of the commissioner's report to which no exceptions were filed, and the rendition of judgment thereon, concluded all questions of fact that might have been, but were not, presented by pertinent exceptions.

We may therefore apply the law to the facts found in the view favorable to the appellee. The situation, when the transaction occurred, was a simple one, easily understood. The warehouse company had a subsisting and valid claim against West & Co. on its accounts for money advanced and for storage on the tobacco. It held a lien on the tobacco in its custody to secure the account due it, coupled with the right to sell the tobacco, collect the sale price, and apply the proceeds to the payment of its claim. By the acts of the warehouse company that situation was completely changed, and new legal relationships were created. The tobacco was sold to Hubbard & Gorin, who got a good title free of the warehouseman's lien for advancements and storage. The account against West & Co was settled, and the warehouse company became the holder of the negotiable paper of Hubbard & Gorin, which it promptly negotiated for its own use. The paper was renewed from time to time, until one of the

makers became insolvent. It is plain that a novation had occurred, and the rights of the respective parties were to be measured alone by the obligations arising from the new situation. 20 R. C. L. pp. 361, 362; 29 Cyc. 1136. Morse v. Wilcoxson, 30 S. W. 612, 17 Ky. Law Rep. 29; Mann v. Bank of Elkton, 104 Ky. 855, 48 S. W. 413, 20 Ky. Law Rep. 1033; People's Savings Bank v. Wright, 183 Ky. 362, 209 S. W. 342; Russell v. Centers, 153 Ky. 469; 155 S. W. 1149; In re Ransford (C. C. A.) 194 F. 658; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A. (N. S.) 1122.

The conclusions of the commissioner, concurred in by the circuit court, are conclusive here, since the result reached was not repugnant to any rule of law.

Appellants later entered a motion to set aside the judgment and permit the presentation of exceptions to the report of the commissioner. The motion, upon a hearing, was denied. No appeal was taken from the order refusing the relief so requested, and the propriety of that ruling is not presented by the present appeal.

The judgment is affirmed.

Judge Dietzman not sitting.