## Frazer et al. v. Burnley.

(Decided May 10, 1929.)

WM. HENDERSON and M. C. ANDERSON for appellants.

ROY SHELBOURNE and W. T. WHITE for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

W. T. Burnley died in the year 1920 intestate, leaving surviving him as his only heirs and distributees at law his son, the appellee, C. W. Burnley, then a minor, and his daughter, Mary, who had married R. L. Foster. Foster was appointed administrator of the estate of W. T. Burnley, and qualified as such, with R. B. Stewart and the appellant R. L. Frazer as the sureties on his administrator's bond. E. R. Burnley, a cousin of C. W. Burnley, was in due time appointed guardian of the latter. When Foster came to make his settlement as administrator, it was discovered that he did not have enough funds on hand to pay the guardian of C. W. Burnley for that part of the W. T. Burnley estate which belonged to C. W. Burnley. Foster and his wife, together with R. L. Frazer and the appellant Martha Stewart, the widow and testamentary beneficiary of R. B. Stewart, who had in the meantime died, thereupon executed their note in the sum of $2,156.38, dated July 10, 1924, and payable, with interest, July 1, 1925, to the guardian of C. W. Burnley, to discharge this obligation which Foster owed the estate of C. W. Burnley. The note was not paid at maturity. About that time C. W. Burnley came of age, and, as it appears, was very anxious to have his guardian settle with him and turn over to him his estate. In order to accomplish this purpose, he was anxious to get this note settled.

Foster was engaged in an automobile business at La Center, in Ballard county, which he conducted in a building jointly owned by him and his wife, and upon which at this time there were two mortgages and also a lien for some unpaid taxes. In October, 1925, a meeting was held in this garage, attended by Foster, his wife, R. L. Frazer, Mrs. Stewart, the appellee Burnley, and his guardian. It seems to be admitted that Frazer dominated this meeting. All of the parties present, except the appellant, but including his guardian, testify that after some parleying it was agreed between all present, with the possible exception of the guardian, who was merely there to acquiesce in, as he did, whatever his ward consented to, that Mrs. Foster should convey to her brother her undivided one-half interest in a farm they jointly owned at an agreed valuation of $3,500. As there was a mortgage outstanding against this undivided interest, C. W. Burn-

ley was to assume this mortgage, and the $3,500 credit was to be debited by the amount of this unpaid mortgage and accrued interest, and the net amount was to be credited on the amount due on the note of July 10, 1924. It was also agreed that the garage property, in which the meeting was held, should be valued at $4,600. The outstanding mortgages were to be ascertained, together with the accrued interest thereon and the unpaid taxes, and these amounts were to be deducted from the agreed value of $4,600. Mr. and Mrs. Foster were then to execute to C. W. Burnley their note for their net equity in this garage, secured by a third mortgage upon it, the note to be payable to C. W. Burnley. If the amount of this note, together with the net equity of Mrs. Foster in the farm, did not equal in amount what was due on the note of July 10, 1924, then Frazer and Mrs. Stewart were to execute their note to C. W. Burnley for the difference. As a matter of fact, the difference between the outstanding liens against the garage property and the agreed valuation of $4,600, when added to the equity of Mrs. Foster in the farm, more than equaled the amount of the note of July 10, 1924. In consideration of this third mortgage on the garage property, and of the conveyance by Mrs. Foster of her interest in the farm, it was agreed that the note of July 10, 1924, should be discharged.

C. W. Burnley does not deny the terms of this agreement, but he says that the agreement was not finally entered into, but only tentatively so, and was to become final and binding only after he had satisfied himself after an investigation about the value of the garage property. In this he is corroborated by no one, and contradicted by everybody present at the meeting, including his own guardian. The next day after the meeting, Mrs. Foster deeded her interest in the farm to C. W. Burnley. Although he accepted delivery of this deed at this time, he did not put it to record until the following February. Shortly after the delivery of this deed he went to see his sister, and told her he was not going to take the third mortgage on the garage property, and offered to return her the deed to the farm, which she declined to receive. Matters remained in this shape until the following January, when E. R. Burnley settled his accounts as guardian of C. W. Burnley, and in doing so turned over to C. W. Burnley the note of July 10, 1924. At this time a credit of $998.93 was put upon the note, representing the equity

of Mrs. Foster in the farm, subject to a debit of $375, which it is claimed represents an additional amount Foster owed the estate of C. W. Burnley, and which through mistake and oversight had not been included in the former settlement, when it was ascertained that he owed C. W. Burnley the amount of the note of July 10, 1924. About this time C. W. Burnley put his deed to the farm to record. At the time the note of July 10, 1924, was executed, Foster and his wife executed to Mrs. Stewart and R. L. Frazer a mortgage on Mrs. Foster's interest in the farm and on their joint interest in the garage to indemnify Mrs. Stewart and R. L. Frazer against any loss they might sustain by reason of being sureties on this note of July 10th. When the arrangements were made at the October meeting in the garage, Mrs. Stewart and R. L. Frazer gave their lawyer a power of attorney to release their indemnifying mortgage.

When C. W. Burnley put his deed to the farm to record, the lien of Mrs. Stewart and Frazer, created by their indemnifying mortgage, was released so far as the farm was concerned; but, inasmuch as C. W. Burnley had refused to accept from his sister and her husband their note and third mortgage on the garage, the lien of Frazer and Mrs. Stewart on that property was never released. After having had his estate turned over to him by his guardian, and having put his deed to record as hereinbefore set out, C. W. Burnley brought this suit on the note of July 10, 1924, subject to the credit of $998.93, hereinbefore mentioned. Mr. and Mrs. Foster made no defense to this suit. Mrs. Stewart and R. L. Frazer answered, and after certain traverses, not here material, set up the agreement entered into by the parties in October in the garage and pleaded it in bar of appellee's claim. They further prayed that, if their plea be not good in law, and if they should have to respond in any respect on the note, then their lien created by the indemnifying mortgage be enforced, and by cross-petition they asked that the holders of the first and second mortgages on the garage property be made parties to this suit, and required to set up what claims they had upon this garage property. This suit was then transferred to the equity docket, and thereafter tried as an equitable action.

Shortly thereafter the first and second mortgage holders of the garage property brought separate suits to enforce their liens, which suits were later consolidated.

Mrs. Stewart and Frazer were made parties to those suits, but after some dilatory motions they made no further defense. Judgment went in that consolidated suit in favor of the first and second mortgage holders, and the garage property was ordered sold. It brought about $3,500, just enough to satisfy the first and second mortgages, the costs of the suit, and tax liens, leaving nothing for any possible third mortgage. An earlier effort made by Frazer and Mrs. Stewart to have this suit consolidated with the consolidated suit was without avail. After proof had been taken in this suit, establishing the facts as we have outlined them, the case was submitted for judgment. The then judge indicated that he would enter a judgment dismissing appellee's petition. A judgment was entered in accordance with his indicated views, but, some question arising, he set aside that judgment on the same day it was entered, and again took the case under submission. Before it was decided, there was at the regular election a change in the judge of this district, and the incoming judge, after reviewing the record, entered a judgment in favor of C. W. Burnley against all of the makers of the July 10th note for the full amount asked in the petition. From that judgment Mrs. Stewart and Frazer only appeal.

We are of the opinion that the parties entered into the agreement of October, 1925, as testified to by all of those present in the garage at that time, except the appellee. The overwhelming weight of the evidence sustains the appellants in this position. Although the amount involved in the agreement of October, 1925, was the same as that represented by the note of July 10, 1924, the agreement of October, 1925, was quite a different one from the contract represented by the note of July, 1924. It is plain that by the October agreement a novation occurred, and the rights of the respective parties were thereafter to be measured alone by the obligations arising from the new situation. Larimore v. West, 227 Ky. 306, 12 S. W. (2d) 856; 20 R. C. L. pp. 361, 362; 29 Cyc. 1136; Morse v. Wilcoxson, 30 S. W. 612, 17 Ky. Law Rep. 29; Mann v. Bank of Elkton, 104 Ky. 855, 48 S. W. 413, 20 Ky. Law Rep. 1033; People's Savings Bank v. Wright, 183 Ky. 362, 209 S. W. 342; Russell v. Centers, 153 Ky. 469, 155 S. W. 1149; In re Ransford (C. C. A.) 194 F. 658; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A.

(N. S.) 1122. Appellee received and accepted the conveyance of his sister's interest in the farm as provided by the October agreement. He would have also received the third mortgage on the garage, but for his unwarranted refusal to do so. All that was agreed to be done in order to effect the discharge of the note of July, 1924, as provided by the October agreement, was done, except in so far as appellee refused to receive performance. But he cannot by such refusal prevent the discharge of the note of July, 1924, as provided for by the October agreement. That the note was a negotiable one does not affect the problem, as appellee argues, for even under the Negotiable Instrument Act (Kentucky Statutes, sec. 3720b119) which appellee cites, a negotiable instrument may be discharged by any act which will discharge a simple contract for the payment of money, and any novation will so operate. See authorities cited, supra. The substitution of the new agreement of October in lieu of the July note, and of the new obligations represented by the October agreement for those under the July note, was sufficient consideration for the discharge of the July note. See authorities cited, supra, and also 46 C. J. 592.

As the October agreement and its performance by appellee's sister and brother-in-law, in so far as appellee would accept performance, and their readiness to perform the rest of the agreement, effected a discharge of the July, 1924, note, the petition of the appellee should have been dismissed.

The judgment of the lower court is therefore reversed, with instructions to dismiss the appellee's petition.