CASE 37.—ACTION BY THE PLANTER'S STATE BANK AGAINST W. C. SCHLAMP AND OTHERS ON A NOTE.—January 16.

# Planter's State Bank v. Schlamp, &c.

Appeal from Henderson Circuit Court.

MALCOLM YEAMAN, Special Judge.

From the judgment plaintiff appeals. Affirmed.

1. Banks—Special Deposit—Appropriation to other debts of Depositor.—The rule that where one indebted to a bank has money on deposit in the bank at the date upon which a note owing to the bank by a depositor falls due, it is the duty of the bank to apply the money on deposit to the discharge of the note, and if it fails to do so it releases the sureties on the note to the extent of such deposit, applies only to general deposits and not to a special deposit.

2. Same—Discounting Note—Money left in Bank—Promise to Pay on Checks—Improper Appropriation—Schlamp discounted a note for $1,000, executed by him and two sureties' at a bank in which he was not a depositor, but at the suggestion of the cashier that it was not convenient to pay him the money on that day but promised to pay it on checks when presented, and on further request for the money said he would prefer to pay on checks, and thereby delayed payment until a partnership note for $1,500, held by the bank on Schlamp and another fell due, when it notified Schlamp that it had appropriated $750 of the $1,000 note to the liquidation of his half of the $1,500 partnership indebtedness to the bank. In an action by the bank on the $1,000 note, payment was resisted by Schlamp and his sureties, to the extent of the $750. Held, That the bank had no right to appropriate the $750 or any part of the $1,000 note to the discharge of any part of the $1,500 debt owing to the bank by Schlamp, but was bound to honor his check for the $1,000 special deposit as it had agreed to do.

Planter's State Bank v. Schlamp, &c.

MONTGOMERY MERRETT for appellant.

(No brief in the record.)

CLAY & CLAY, attorneys for appellees.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

The general rule that a bank may apply general deposits to the payment of the past due indebtedness of the depositor to the bank is admitted. The note in this case was signed by the sureties under an express promise that the money was not to be used for a particular purpose; the money was placed on deposit in bank by the principal at the request of and for the convenience of the bank, with full notice and knowledge that it was to be used for some particular purpose, other than the payment of a pre-existing debt of the principal, and when the bank diverted the same from the purpose for which it was borrowed, and used the proceeds to pay a pre-existing debt of the principal to the bank, the sureties on the note were released from liability. (Russell v. Ballard, 16 B. Mon., 201; Gano v. Farmer's Bank of Kentucky, 103 Ky., 508.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The appellant instituted suit in the Henderson circuit court against William C. Schlamp, Phil Schlamp, and John W. Geibel, seeking to recover from them the sum of $1,000 on a promissory note dated November 15, 1905, and due 90 days after date, with interest from maturity. Phil Schlamp and John Geibel filed their answer, set-off, and counterclaim, in which they pleaded that they were sureties merely upon the note, and that the money was borrowed for a particular purpose and was to be applied to the payment of a particular debt, and that these facts were known to the bank and its officers at the time the note was executed and discounted by said bank; that notwithstanding the knowledge of this fact, the bank had retained $750 of the $1,000 for which the note

was executed, and had applied it to the discharge of a debt due to the bank by W. C. Schlamp, upon which Phil Schlamp and John W. Geibel were not sureties and in which they had no interest, and that by reason of this act of the bank in diverting $750 from the purpose and use for which it was borrowed and intended to be applied, and for which W. C. Schlamp had agreed with them it should be applied—and but for which agreement they would not have signed the note—they were released from their liability as surety on said note; and they asked that the petition be dismissed as to $750 of the amount sued for; and if that could not be done, that the bank be required to pay to them the $750 which it had wrong-fully appropriated to the discharge of another debt. Issue was joined upon the facts set up in this answer, set-off, and counter-claim, the case was tried by agreement before Hon. Malcolm Yeaman, special judge, who, at the conclusion of all the testimony, instructed the jury to find for plaintiff in the sum of $250, which was done. A judgment was thereafter entered upon this verdict, and from the ruling of the trial court in peremptorily instructing the jury to find for plaintiff for $250, the bank appeals.

The facts proven are as follows: At the time of the execution of the note sued on, the plaintiff bank held a claim against W. C. Schlamp and his partner, one Andrews, for $1,500, which was about due. W. C. Schlamp was known to be in failing circumstances. He owed the bank other money, and the bank had previously called upon Andrews, and requested that he and Schlamp should strengthen the $1,500 note. W. C. Schlamp owed his brother Phil $1,000, and he requested the payment of same. W. C. Schlamp being unable to pay, agreed to borrow the money if he could, provided Phil would become his surety on

the note. To this Phil agreed, and also agreed to get their brother-in-law, John W. Geibel, to sign the note, in order to assist W. C. Schlamp, in raising the money for Phil Schlamp. In pursuance of this agreement, W. C. Schlamp called upon the Planters' State Bank, and inquired if he could get the needed money, to-wit, $1,000, if his brother Phil and John W. Geibel would sign his note as surety. Being told that he could, he took the note, went away, had it executed, signed by himself, Phil Schlamp, and John W. Geibel as sureties, and returned to the bank with it. He paid to the bank the discount in cash, and asked to be given the $1,000. The cashier informed him that this was inconvenient and not customary, and told him to give his check or checks upon the bank for this amount, and it or they would be paid. He returned to his brother Phil, and offered to give him a check, and, upon Phil's demanding of him that he get the money, he returned to the bank and again requested that the $1,000 be paid to him, and presented his check for same. He was again told by the teller, after a conference with the cashier, that it did not suit them to pay the money in cash, and that it would be much more to the liking of the bank if he would give his check for the money, and let it come in and be paid in the usual course of trade. Before returning to the bank, however, the second time, he had called the cashier up over the telephone, and had been assured by the cashier that his check would be paid when drawn for this $1,000. The proof further shows that W. C. Schlamp had done no business with that bank as a depositor for some four or five years; that he had had no deposit in that bank in his name in that length of time; that upon the occasion in question he made out no deposit slip, was given no deposit slip, passbook, or other evi-

dence of the fact that he had deposited money in the bank, but was assured no less than three times in person and once over the telephone that this $1,000 would be paid upon checks drawn by him upon the bank, if he would let them come in in the usual course of trade. The proof shows that the bank had in cash in its vaults at that time more than $20,000, and the only reason given by the cashier or teller—either at the time or at the date of the trial—for their refusal to pay this money when requested to do so, and when W. C. Schlamp presented his check accompanied by his request that they do so, was that they would be put to the inconvenience of counting out the money. Some three or four days after the discount of this $1,000 note, the $1,500 note fell due, and W. C. Schlamp was sent for and notified by the officers of the bank that they would not pay the $1,000 on his checks, as they had agreed to do and assured him they would do, but that they had appropriated $750 thereof toward the liquidation of his $1,500 partnership indebtedness to the bank. He was permitted to draw the remaining $250.

This court has frequently decided that where one indebted to a bank has money on deposit in the bank at the date upon which a note owing to the bank by the depositor falls due, it is the duty of the bank to apply the money on deposit to the discharge of the note, and if it fails to do so it releases the sureties on the note to the extent of the deposit on hand in its bank at the time of the maturity of the note. This rule, however, applies only to general deposits. It has never been held in this State to apply to a special deposit. Neither would it apply to a general deposit against which the bank, through its officers, had issued a certified check. We are of opinion that the facts in the case before us clearly show that W. C. Schlamp

did not want to become a depositor in said bank; that he was not requested to become a depositor at the time that he arranged to borrow this $1,000; the proof is clear that he wanted his money on the $1,000 note; and it was only upon the assurance of the cashier that the money would be paid upon his check when presented that he consented it should remain in the bank. Not being satisfied, evidently, with his first conversation with the cashier, he called him up over the telephone, and again notified him that he wanted his money, and was again assured that the money was there in the bank and would be applied to the discharge of such checks as he should give upon it, to the extent of $1,000; and when he later called upon the teller, he received similar assurances. These assurances and acts on the part of the officers of the bank lulled him to sleep, as it were, and induced him to consent that the bank should retain his money. Their acts amounted to an agreement on the part of the bank to pay this money any time that they should be called upon to do so by him, by check given to any one therefor. It certainly took it out of the pale of a general deposit, and to permit the bank to appropriate this money to the discharge of an indebtedness which the bank then held against W. C. Schlamp would be to permit the bank to perpetrate a fraud, not only upon W. C. Schlamp, but upon Phil Schlamp and John W. Geibel, who signed the note with the distinct understanding that Phil Schlamp was to get the money thereon. The facts proven do not warrant the conclusion that the bank knew to whom this money was to be paid, but there is not the slightest doubt but that the bank knew that the money was wanted for some particular purpose, and that particular purpose was not the payment of any part of the $1,500 indebtedness to the bank. The bank retained this

$1,000 by giving to W. C. Schlamp positive assurance, on as many as four different occasions, that the money would be paid when his checks were presented therefor. Under this promise, they secured possession of this $1,000. They contracted with him, as it were, that if he would leave the money in their bank and check it out, rather than take it in cash, they would pay it to him when he called for same, or when he gave a check to any one else calling for same. Under these facts, the bank had no right to appropriate the $750, or any part of this money, to the discharge of their $1,500 debt, or any other debt W. C. Schlamp owed to the bank, but having induced him to leave the money there under a promise that they would pay it whenever he presented, or any one else presented, his check therefor, the bank was bound to honor the check when it was presented. To have permitted the bank to retain this money after having gotten possession of it in the way it did, would have defeated the ends of justice and encouraged a species of practice not commendable.

We are of opinion that, under the facts, the instructions given by the trial court were the law of the case.

The judgment is affirmed.

Petition for rehearing by appellant overruled.