## Southern National Life Realty Corporation, et al. v. Peoples Bank of Bardstown.

(Decided November 27, 1917.)

Appeal from Nelson Circuit Court.

1. Appeal and Error—Partial Transcript.—In the absence of a transcript of the evidence, only the sufficiency of the pleadings to support the judgment can be considered on appeal.

2. Pleading—Dismissal.—The dismissal of a pleading leaves the party filing it in the same position as if the pleading had not been filed.

3. Appeal and Error—Harmless Error—Principal and Surety.— Where the jury found that a defendant, maker of a note, was not a surety, a holding insufficient, on demurrer, his defense of surety and discharge by the surrender, without his consent, of collateral securities pledged to secure the note, is not prejudicial and will not authorize a reversal.

4. Bills and Notes—Pleadings—Judgment.—In an action on a promissory note, pleadings held sufficient to support judgment.

5. Bills and Notes—Holder in Due Course—Payee of a negotiable promissory note, to whom the note was issued, is not a holder in due course, as defined in Negotiable Instruments Act, section 52.

6. Principal and Surety—Collateral Securities—Discharge of Surety.—Between original parties, the surrender, without the consent of the surety, of collateral securities given to secure payment of a negotiable promissory note, releases the surety; and this defense is not affected by the Negotiable Instruments Act.

7. Principal and Surety—Application of Deposits—Corporations.—A bank, having on deposit funds to the credit of corporations, whose entire capital stock is owned by the principal maker of a note held by it, cannot apply such funds to the payment of the note, at its maturity; and a surety on the note is not discharged by reason of its failure to make such application.

NAT W. HALSTEAD, HELM BRUCE, BRUCE & BULLITT and GROVER C. SALES for appellants.

JOHN S. KELLY, VICTOR L. KELLY and R. C. CHERRY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming as to Southern National Life Realty Corporation, and reversing as to Allen and Ray.

Appellee, plaintiff below, filed this action against appellants, Southern National Life Realty Corporation, M. K. Allen and John W. Ray, together with three others who are not parties to the appeal, to enforce the collection of a note for $5,000.00 executed and delivered to it by the defendants October 6, 1913, and due February 6, 1914, with interest from date. The Realty Corporation filed a separate answer in three paragraphs, in each of which it alleged its name was signed to the note, as surety, by its president, and that it was not liable upon the note; in the first paragraph, because, as a corporation, it had no authority to sign such an obligation as surety; in the second paragraph, that its president was not empowered by its board of directors to sign its name as surety; and in the third paragraph, that collateral, deposited with plaintiff by the principal debtor as security for the payment of the note, had been, after its execution and before maturity, surrendered to the principal without its knowledge or consent, and it was thereby released from liability.

Defendants, M. K. Allen and John W. Ray, in their separate answer of two paragraphs, alleged they were sureties on the note and that they were released from liability thereon; in the first paragraph, because plaintiff had surrendered to the principal debtor, after execution and before maturity of the note, collateral securities pledged by the principal for the payment of the note; and in the second paragraph, because, at the maturity of the note, the principal debtor had on deposit with plaintiff funds sufficient to pay the note, and that plaintiff failed to discharge the note out of such funds.

Thereafter, plaintiff filed an amended petition, alleging that the statement in its original petition that the realty corporation was incorporated was made by mistake of the draftsman, and denied that it was incorporated, alleging that it was a co-partnership, composed of Allen, Ray and the other individual defendants, and a judgment was asked against defendants as members of the partnership.

Defendants, Allen and Ray, then entered a motion to require the plaintiff to elect whether it would proceed against them under its original or amended petition, and, being required so to do, plaintiff elected to prosecute its original petition against these defendants, and this additional order was entered: "On motion of plaintiff the amended petition herein is dismissed without preju-

dice as to the Southern National Life Realty Corporation.''

A demurrer was then sustained to each paragraph of the answer of the defendants, Allen and Ray, and, upon their refusal to plead further, a judgment was rendered against them for the amount of the note, $5,000.00, and interest.

Demurrer was also filed and sustained to the third paragraph of the answer of the realty corporation; and a reply filed traversing the allegations of the first and second paragraphs of that answer.

Upon these issues, a trial was had before a jury which resulted in a verdict and judgment against the realty corporation for the amount of the note, $5,000.00, and interest.

Defendants, realty corporation, Allen and Ray, are appealing from these judgments.

As the defenses of the realty corporation were separately considered and tried in the court below and present different questions upon appeal from those controlling the judgment against appellants, Allen and Ray, we shall consider first and separately the appeal of the realty corporation.

As the judgment against the realty corporation resulted from the verdict of a jury upon evidence heard respecting the defenses presented in the first two paragraphs of its answer, and as appellant has not brought up the evidence heard by the jury, it is manifest that, upon the issues of fact submitted to the jury, the defendant is precluded, and that nothing is before us but the sufficiency of the pleadings to sustain the judgment. Martin v. Richardson, 94 Ky. 183; Clark v. Wallace Oil Co., 155 Ky. 836.

1. It is insisted that the pleadings do not support the judgment for two reasons: First, because of the allegations in the amended petition that defendant, realty corporation, was not a corporation; and, second, because the third paragraph of the answer, to which a demurrer was sustained, presents a defense.

(a) Counsel for defendant argue, with seeming confidence, that the allegations of the amended petition are to be considered as part of the pleadings, because not expressly withdrawn, although, as we have seen, the amended petition was ''dismissed without prejudice as to the Southern National Life Realty Corporation.'' This contention seems to us so obviously untenable as to merit

but slight discussion. The dismissal certainly removed the pleading from all consideration upon behalf of plaintiff as if it had never been filed; plaintiff surely could not have been granted any relief upon the strength of any statement therein, nor can the defendant with any better reason. We are unable to discover any material difference, in effect, between a withdrawal and a dismissal, and are clearly of the opinion that the dismissal was equivalent to a withdrawal of every allegation contained in it, as a dismissal leaves the parties as if the action had not been filed. Magill v. Mercantile Trust Co., 81 Ky. 132; Freeman on Judgments, section 270.

(b) The sole issue of fact upon the defense presented by the first paragraph of the answer was whether the realty corporation was a surety on the note, and this same issue of fact was raised by the second paragraph of the answer, with only one other, and that of no avail to the defendant unless the jury decided it was a surety and not the principal in the note; so that, a finding by the jury for plaintiff necessarily decided that defendant was not a surety, but was the principal, in the note sued upon. The jury did find for the plaintiff, and it is not claimed the pleadings upon the two defenses tried before the jury do not support the judgment, but it is argued that the allegations of the third paragraph of the answer, to which a demurrer was sustained, must be taken as true, and that, as it is therein stated that the defendant was merely a surety on the note and released by the surrender of collateral held as security for the payment of the note, the pleadings do not sustain the judgment. This argument, although ingenious, is certainly not sound. While it is true that, upon a test of the sufficiency of a pleading upon demurrer, its allegations are taken as true, and the third paragraph does, in our judgment, for reasons hereinafter explained, present a defense and the court erred in sustaining a demurrer to it, that fact does not authorize us to reverse the judgment, because, under the peculiar facts thus presented, it was not a prejudicial error.

Of course, if the defense tendered by the third paragraph had been an entirely distinct and separate defense, based upon facts different from those of the defenses tried, its rejection would show that the pleadings did not support the judgment and necessitate a reversal; but, in the instant case, all these defenses depended entirely upon a single primary allegation of fact, that the defendant was surety on the note, without which there was

no defense in any paragraph; and in the trial of this. question of fact, vital alike to all three tendered defenses, its existence was disallowed by the jury; and, on account of the absence from the record of the evidence heard, we cannot question their decision of this fact. It therefore results that, although the defense set up in the third paragraph was erroneously disallowed by the court,. the allegation of fact, upon which it rested, was tried and decided adversely to the defendant, and it was not prejudiced by the error, because it could not have altered the verdict.

Moreover, the pleadings do sustain the judgment because the only issue presented by the rejected third paragraph that was not submitted to the jury, is whether or not the plaintiff surrendered collateral deposited to secure the note, which was not a defense to the defendant unless it was a surety merely, and that question was tried by the jury and decided adversely to it.

We, therefore, conclude the pleadings support the judgment against the appellant, Southern National Life Realty Corporation, and it should be affirmed.

2. In the first paragraph of their answer as amended,. to which a demurrer was sustained, defendants, Allen and Ray, alleged as a defense that subsequent to the execution of the note sued on, upon which it is admitted they were sureties only, the plaintiff, knowing they were sureties merely and without their knowledge or consent,. surrendered to the principal on the note collateral securities that he had deposited with the bank to secure its payment, and which were held for that purpose by the plaintiff when the note sued on was executed.

Counsel for plaintiff insist these allegations, if true,. do not state a defense and, in support of this contention,. rely solely upon the opinion of this court so holding upon a petition for rehearing, in the case of Elsey v. Peoples Bank of Bardwell, 168 Ky. 701, in which the original opinion, reported in 166 Ky. 386, upholding the same defense was withdrawn.

Counsel for appellants ask us to reconsider this latter opinion and overrule it, insisting that it is unsound and that the first opinion rendered in that case correctly states the law upon the question involved, and that same has not been changed or affected by the Negotiable Instruments Acts, as stated in the latter opinion. That the whole question involved, unless affected by the Negotiable Instruments Act, was carefully considered and correctly decided in the exceptionally well prepared

original opinion is conceded, and, that the effect of the act upon the question was not fully presented or thoroughly considered upon the petition for rehearing, is patent from the response, in which only sections 29, 60, 119 and 191, of the act, were considered or referred to; whereas, sections 30, 52, 57, 58 and 190, which were not called to the court's attention, are clearly involved and determine the question.

Section 190 defines the word "issue," as used in the act, to mean "the first delivery of the instrument complete in form to a person who takes it as a holder."

Section 30 declares "an instrument is *negotiated* when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; . . . if payable to order it is *negotiated* by the indorsement of the holder, completed by delivery."

It is, therefore, apparent that, as used in the act, these words have a peculiar and restricted meaning. The promissory note involved here was *issued* to plaintiff; but it was never *negotiated*. See R. Vander Ploeg v. Van Zunk (Iowa), 13 L. R. A. (N. S.) 490.

Section 52 provides: "*A holder in due course* is a holder who has taken the instrument under the following conditions: . . .

"4. That at the time it was *negotiated* to him he had no notice of any infirmity in the instrument or defect in the title of the person *negotiating* it."

And, as plaintiff was the payee, to whom the note was *issued* and the note was never *negotiated*, although a negotiable instrument, it is likewise apparent plaintiff was a holder, but not *a holder in due course*, who, under section 57, "holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, etc." See also 8 C. J. 51 and 468; 3 R. C. L. 1031-2; Words and Phrases, 2nd ed., vol. 2, p. 899.

Section 58 is, in so far as applicable: "In the hands of any other than a holder in due course a negotiable instrument is subject to the same defenses as if it were non-negotiable."

It would, therefore, seem unescapable, as we said in First National Bank of Central City v. Utterback, 177 Ky. 76, that "The plain intention of the statute is to render negotiable paper after negotiation free from all defenses available to prior parties among themselves and at the same time, preserve to the maker all defenses against the original payee." Or rather in the terms of

the statute, against a holder other than a holder in due course. 8 C. J. 717.

That a surety is a maker, and primarily liable, is clearly provided by sections 29 and 191. First State Bank of Nortonville v. Williams, 164 Ky. 143; Rouse v. Wooten, 140 N. C. 557, 11 Am. St. Rep. 875; Vanderford v. The Farmers & Mechanics National Bank, 105 Md. 164, 10 L. R. A. (N. S.) 129; Richards v. National Exchange Bank Co., 81 Ohio St. 348, 26 L. R. A. (N. S.) 99.

Wherefore, appellants, under the very provisions of the act above referred to, could defend as against the plaintiff as though the note sued on were a non-negotiable instrument; that is, without regard to the Negotiable Instruments Act, unless as held in the second opinion in the Elsey case, section 119 deprived them of such defenses.

Section 119 provides only how "a negotiable instrument is discharged"; that is, how the instrument itself is satisfied. Clearly, that section has no application here, because it is not even claimed that the instrument was discharged. In fact, a judgment was rendered thereon against the Southern National Life Realty Corporation, held by the jury to be the principal on the note, and we have affirmed that judgment herein; and a default judgment was rendered against the party claimed by these appellants to have become principal on the note sued on, which was a renewal note.

Section 120 provides only how a *party* secondarily liable is discharged, and manifestly does not apply to one primarily liable, as are appellants.

Unquestionably the Negotiable Instruments Act "covers the entire subject of negotiable instruments and must be treated as a complete body of law upon that subject and controlling in all cases to which it is applicable," as said in the second Elsey opinion, but its provision in section 58 that "in the hands of any holder, other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable," is as much a part, and as potent, as any of its other provisions, except as modified by other provisions of the act itself. One such modification, sustained by the great weight of authority is that an extension of time to the principal does not release a surety primarily liable, but does release one secondarily liable, allowed upon the ground that the act, having treated of releases for extensions of time, presumably all releases for that reason,

not specifically allowed, were excluded; and this rule was approved and applied in First State Bank of Nortonville v. Williams, *supra.* But the act does not treat, at all, of collateral securities or of releases of sureties primarily liable by surrender of collateral securities, unless in section 58; and, as such release in non-negotiable instruments was uniformly recognized when the statute was enacted, there can be no doubt it was the intention to preserve that defense, among the original parties, by section 58.

And while the act covers the entire subject of negotiable instruments and does, as sometimes said, cover the entire subject of discharge and release, this is not done, as was assumed in the second Elsey opinion, by sections 119 and 120 alone, but is covered by many sections, including section 58, which, as we have seen, preserves such defenses against a holder, other than a holder in due course, as are allowable upon non-negotiable instruments. As often has been pointed out, the Negotiable Instruments Act is not a new law, but is, with few exceptions, merely a codification, seeking uniformity of construction and enforcement, of old laws in force and effect, but theretofore so variously construed in the different states as, in many cases, to impede and render dangerous trade in commercial paper, now become common and necessary between parties of diverse citizenship, which was and always has been recognized as an important and legitimate branch of the law merchant, whether under the common law, statutory enactments, or judicial pronouncements. Wettlaufer v. Baxter, 137 Ky. 362; Campbell v. Fourth National Bank, 137 Ky. 555. In both of these cases, in construing the act, it was held, as stated in the latter case, that: "Where it lays down a new rule it controls; but where its language is consistent with the rule previously recognized, it should be construed as simply declaratory of the law as it was before the adoption of the act." To the same effect are Mechanics & Farmers Savings Bank v. Katterjohn, 137 Ky. 427; Williams v. Paintsville National Bank, 143 Ky. 781; First National Bank v. Beckel, 143 Ky. 754; Young v. Exchange Bank, 152 Ky. 293.

The act does not lay down any new rule with reference to the effect, upon the liability of sureties to the original payee, of his surrender of collateral securities to the principal maker, or treat of collateral securities at all, but, upon the other hand, does specify that in the hands of a holder, such as we have seen plaintiff here

was, a negotiable instrument shall be subject to the same defenses as if non-negotiable.

It would have been strange, indeed, if it had been the purpose of the legislature to destroy, as between the original parties, a defense so long recognized and undeniably founded upon principles of equity and justice, that it was not done in plain terms rather than left to a mere inference, deducible from the supposed scope of the act. But, strange as this would have been, it is stranger still that, if any such inference were possible, in none of the many text books we have examined ably treating the subject, and published since the act was passed, is there any such suggestion, although the effect of the act upon every rule and principle of the law as theretofore existing which it does affect, is explained either in the text or foot notes. See Daniels Negotiable Instruments, 6th Ed.; Jones Collateral Securities, 3rd Ed., 3 R. C. L. under Bills and Notes; 8 C. J. Bills and Notes, 37 L. R. A. (N. S.) 699 note. The same reason that accounts for the failure of these authors to discuss the point, no doubt, explains the fact that, although the defense has been allowed in many cases in states which had theretofore adopted the act, only one of these cases, so far as we have discovered, and that not in a court of last resort, discusses any possible effect of the act upon such defenses, and in that case it was held the act does not affect the defense we are now considering. Frazier v. First National Bank of Elwood City, 34 Ohio Circuit Court 508.

We, therefore, conclude the Negotiable Instruments Act has not changed or affected the defense set up in the first paragraph of the answer of defendants, Allen and Ray, and overrule the second opinion in Elsey v. Peoples Bank of Bardwell, 168 Ky. 701; hence, it was error to sustain the demurrer thereto, and we have not overlooked the fact that plaintiff contends the answer of these defendants did not properly present the defense we have been considering, in that the language employed is susceptible of the construction that the collateral was surrendered before the note sued on was executed, but we do not think the answer is open to this criticism, and, in our judgment, the facts constituting the defense are sufficiently alleged.

3. The second paragraph of the answer of these defendants attempted to defend upon the ground that, at the maturity of the note, the principal thereon had on deposit in the bank to his credit funds sufficient to dis-

charge the note, and that the failure, of plaintiff to so employ these funds released the defendants, who were merely sureties. That, if properly pleaded, these facts would release the defendants has long been the law in this state, both before and since the passage of the Negotiable Instruments Act. Pursifull v. Pineville Banking Co., 97 Ky. 154; Bank of Taylorsville v. Hardesty, 91 S. W. 729; Burgess v. Deposit Bank of Sadieville, 97 S. W. 761; Planters State Bank v. Schlamp, 124 Ky. 295; Royse v. Winchester Bank, 148 Ky. 368. And, for reasons heretofore stated in discussing the first paragraph of the answer, equally applicable here, we do not think the Negotiable Instruments Act changed the law on this question.

But, in our judgment, the statements of this paragraph of the answer are insufficient to support the defense, and the demurrer to it was properly sustained, because, while it was alleged the principal owned funds on deposit in plaintiff's bank at the maturity of the note sufficient to satisfy same, the further allegations of the paragraph state these funds were on deposit in the names of the principal, F. G. Walker Company and Mattingly & Moore Distillery Company, but in either event or under either name were the funds of the principal, Edelen, as he owned all of the shares of stock in both companies, and this fact was known to the plaintiff. These allegations, upon demurrer, were no more than an allegation that the funds were credited to the named corporations; and the allegation that the principal owned all of the stock in the corporations, even if a fact, and known to plaintiff, did not authorize the plaintiff to apply such funds to the payment of its obligations against Edelen, as his ownership of the stock of the corporations did not vest him with title to the funds. Commonwealth v. Muir, 170 Ky. 435; Cook on Corporations, vol. 3, section 709.

For the reasons indicated, the judgment against the Southern National Life Realty Corporation is affirmed, and the judgment against Allen and Ray is reversed for proceedings consistent herewith.

The whole court sitting.