## Alexander et al. v. West et al.

(Decided December 15, 1931.)

542

M. C. REDWINE, HUGH RIDDELL, and HUNTER M.˙SHUMATE for appellants.

JOHN W. WALKER and BEN H. SCOTT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On February 1, 1912, J. F. West, and George B. Williams and W. P. Williams as sureties, executed and delivered to J. D. Alexander their promissory note by which they promised to pay him on or before February 1, 1913, the sum of $1,393.49. On the note is the indorsement: "Int. paid to Jan. 29, 1915." On the same day West executed to the sureties, George B. Williams and W. P. Williams, a mortgage to secure them in their undertaking. The mortgage covered a large body of land, which was afterwards subdivided and sold to various parties. Included in the mortgage was the home place, which West, on November 28, 1925, conveyed to his wife, Lucy B. West, for life, with remainder to his children and heirs at law. The mortgage was not put to record until after the death of J. F. West on February 1, 1926. West left no will, and was survived by his widow, Lucy B. West, and several children. On February 12, 1926, R. E. West, a son, qualified as administrator, and on August 13, 1926, brought suit against the widow and heirs of J. F. West and cer-

tain creditors, including J. D. Alexander and Pearl Cole, to settle the estate. On May 12, 1927, Alexander filed his answer and cross-petition against the sureties, George B. Williams and W. P. Williams, in which he set up the note, and asked judgment against R. E. West as administrator, and also against the Williamses. On January 3, 1928, the Williamses filed their answer and cross-petition against the defendants, and also against R. E. West as administrator, and in his own right, in which they set up the note and mortgage, and asked that they be adjudged a lien upon the tract of land therein described, and that a sufficiency thereof be sold to satisfy the debt to Alexander, together with interest and costs. To this pleading the defendants interposed a demurrer, which was overruled. They then filed a reply to the answer of J. D. Alexander, pleading the 15-year statute of limitations, and alleging that the indorsement of the credit on the note was made without right or authority, or without the knowledge or consent of J. F. West. At the same time they filed a separate reply to the answer and cross petition of the Williamses also alleging that the indorsement of the credit on the note was made without the knowledge or consent of West, and pleading not only the 15-year statute of limitations, but also the 7-year statute relating to sureties. The administrator then filed an amended petition pleading that his intestate at the time of his death held the legal title to certain property embraced in the mortgage, and this property was unincumbered except for improvement liens in favor of the city of Irvine. A few days later Alexander filed a rejoinder to the reply of the defendants in which he denied that the indorsement of the credit on the note was made without the knowledge or consent of the decedent West, and further denied that his cause of action accrued more than 15 years before the institution of the action. On the the same day Alexander filed a demurrer to the reply of plaintiffs to the answer and cross petition of the Williamses. A few weeks later the defendants filed an amended reply to the answer and cross-petition of the defendants George B. Williams and W. P. Williams, pleading that the note sued on was assigned, and delivered to the Williamses, on or about the 1st day of February, 1912; that said note was negotiable, and that no action was instituted thereon by the Williamses until May 12, 1927; that more than 15 years had elapsed since the execution of the note; and that the note was

barred by limitations. They further alleged that at all times since February 1, 1912, the Williamses had been the owners of the note, and that the interest alleged to have been paid to Alexander was in fact paid to the Williamses. On the same day the defendants filed an amended reply to the answer and cross-petition of J. D. Alexander, also pleading that Alexander was not the owner of the note, but that it was assigned and delivered on February 12, 1912, to the Williamses. They further pleaded that the note had been paid in full. On March 9, 1929, the Williamses filed their amended answer and cross-petition, in which they set up the note with the suretyship and the mortgage by which they were secured and alleging that by reason of the mortgage they had the prior lien on the property therein set forth. In this pleading they specifically acknowledged their liability to J. D. Alexander, and asked that the Wests be compelled to pay off the note to Alexander by a sale of the property which had been mortgaged to them for the purpose of indemnity. They further averred that they were instituting and maintaining the action, not only for their own benefit, but for the benefit of J. D. Alexander, and asked that he be subrogated to their rights and that their debt to Alexander be satisfied out of the property on which they had the lien. The defendants then filed a reply to the amended answer and cross-petition of the Williamses, not only denying its allegations, but pleading in substance that the note had been paid, and also that it had been negotiated, and was barred by the 5-year statute of limitations. It further alleged that J. F. West was the owner of certain real estate at the time of his death, and that if it should be adjudged the note was valid, this real estate be sold to satisfy the mortgage lien before the homestead was sold. Thereupon the Williamses filed a demurrer to the reply of the defendants, and also a motion to make more definite and to strike. At the same time the Williamses filed a rejoinder to plaintiffs' reply denying that the note had been paid, or that it had ever been assigned to them, and alleging affirmatively that J. D. Alexander was the owner of the note. Thereupon the court overruled the general demurrer of the Williamses to the reply to the amended answer and cross-petition, as well as their motion to make more specific, to paragraph, and to strike. At the same time the court sustained the demurrer to the allegations of the plaintiffs, setting up the plea of limita-

tions. The case was then submitted on the pleadings, proof, and exhibits, and the court adjudged that the cross-petitioners, W. P. Williams and George B. Williams, were not entitled to the relief sought, and that their answer and cross-petition be dismissed at their costs. The court further adjudged that J. D. Alexander recover of the estate of J. F. West the sum of $1,393.49 with interest from January 29, 1915, until paid, and together with costs. To these rulings W. P. Williams and J. D. Alexander excepted and prayed an appeal, which was granted.

Our conclusions on the questions presented are as follows:

1. The burden of showing that the note had been paid being on those who pleaded payment, and there being no evidence of payment, the court did not err in holding that the note had not been paid.

2. There being no evidence that the note in question was placed on the footing of a bill of exchange by being actually negotiated in good faith for value and before maturity, the court properly held that the 15-year statute of limitations, and not the 5-year statute, applied. Kentucky Statutes, secs., 2514 and 2515; Coleman v. Coleman's Ex'r, 189 Ky. 96, 224 S. W. 668.

3. No cause of action accrued on the note until its maturity on February 1, 1913, and as Alexander, the payee, filed his answer and cross-petition on May 12, 1927, and therefore within less than 15 years from that time, it follows that the note was not barred by limitations.

4. A security given by the principal to his surety is a security for the debt, as well as the ultimate protection of the surety, and operates eo instanti for the benefit of the creditors. Taylor v. Farmers' Bank of Kentucky, 87 Ky. 398, 9 S. W. 240, 10 Ky. Law Rep. 368. In such case the creditor may be subrogated to the rights of the surety either on his own application, or on the application of the surety after the debt matures, in an action against his principal to compel payment. Section 661, Civil Code of Practice; Hurm v. Collignon, 202 Ky. 807, 261 S. W. 602; Glass v. Thompson, 9 B. Mon. 235. In so far as the sureties were personally liable, no one else could plead limitations on their behalf. On the contrary, it was for them to decide whether they would avail themselves of the plea of limitations as against the note which

they had not paid, or acknowledge their liability and compel their principal to pay by a sale of the property which he had mortgaged to them for the purpose of indemnifying them against loss. This they had the right to ask, not only for their own benefit, but for the benefit of Alexander, the creditor, who was subrogated to their rights. Hurm v. Collignon, supra.

5. Although the plea of limitations as to the personal liability of the sureties was also personal, yet Mrs. West and her children, to whom the home place was conveyed by her husband prior to his death, could plead that the mortgage lien on the property given to the sureties was barred by limitations. Hazel v. McCullough, 188 Ky. 419, 222 S. W. 100.

6. On the question of limitations as to the mortgage lien, the cases of Prewitt v. Wortham, 79 Ky. 287, and Allen v. Shepherd, 162 Ky. 756, 173 S. W. 135, are not controlling. When properly understood, those cases merely declare the rule that, unless a mortgage contains words of promise, it will be barred by the same limitation as the debt it secures, and since in those cases the debts were barred after 5 years it was held that the mortgage liens were also barred. Even though it be conceded that the mortgage before us contains no express promise to pay, it must not be overlooked that it was made to secure the payment of a note which was not barred after 5 years, and the 5-year statute is not applicable.

7. If the mortgage had operated solely for the benefit of the sureties, there might be merit in the contention that it was barred by the 7-year statute of limitations applicable to sureties, but that is not the case. The mortgage was executed, not only for the purpose of indemnifying the sureties, but for the further purpose of securing the note executed by West to Alexander, and was to become void only in the event that the note was paid. In the circumstances the mortgage lien continued until the note was barred, Yeates v. Weeden, 6 Bush 438; Kendall v. Clarke, 90 Ky. 178, 13 S. W. 583, 11 Ky. Law Rep. 980; Clift v. Williams, 105 Ky. 559, 49 S. W. 328, 51 S. W. 821, 20 Ky. Law Rep. 1261, 21 Ky. Law Rep. 551; and suit having been brought within less than 15 years after the maturity of the note, it follows that neither the note nor the mortgage was barred by limitations.

8. Although the mortgage was not put to record until after the property had been conveyed to Mrs. West and her children, not only was she a party to the mortgage and knew of its existence, but she and her children, who paid nothing for the property, were not bona fide purchasers for value, and therefore took subject to the mortgage. Craddock v. Lee (Ky.), 61 S. W. 22, 22 Ky. Law Rep. 1651; Kentucky River Coal Corporation v. Sumner, 195 Ky. 119, 241 S. W. 820; Hardin's Ex'rs, Etc., v. Harrington, Etc., 11 Bush 367.

9. As Alexander was entitled to be subrogated to the mortgage lien of the sureties, and the sureties were entitled to have the subrogation made effective, it follows that the rights of Alexander, as well as the rights of the sureties, were adversely affected by the judgment, and that both had the right to appeal.

Judgment reversed, and cause remanded, with directions to award Alexander a lien on the property involved, and order a sale of so much thereof as may be necessary to pay his debt, interest, and costs.

Whole court sitting.