## State Nat. Bank of Frankfort v. Thompson et al.

Dec. 16, 1938.

As Corrected on Denial of Rehearing March 24, 1939.

William B. Ardery, Judge.

528

POLK SOUTH, JR., and J. C. JONES for appellant.
EDWARD C. O'REAR and G. L. DRURY for appellees.

Opinion of the Court by Stanley, Commissioner—
Reversing.

On January 15, 1926, Scott Thompson and his mother, Mrs. Martha S. Thompson, executed their joint note for $15,000 to the State National Bank of Frankfort. As security they pledged 45 shares of stock of the J. B. Blanton Company, a local corporation. Mrs. Thompson owned 30 and Mr. Thompson 15 of these shares. As further security Mrs. Thompson mortgaged her residence. Mrs. Dorothy M. Thompson, the wife of

Scott Thompson, did not sign the note, but for the same purpose she and her husband executed a mortgage on their home to which she held title. A few days before the note became due, six months later, Mrs. Martha S. Thompson died. Scott Thompson qualified as her administrator with will annexed. Under the mistaken conception that he had authority to do so, the renewal of the note was signed by Scott Thompson as "Executor of Martha S. Thompson's estate," as well as by himself, individually. The original note was marked "paid" and surrendered to him. Thereafter he similarly executed many successive renewal notes. He repaid the interest, and in October, 1929, paid $250 of the principal. These transactions continued until October 7, 1933, when the bank brought this suit on the indebtedness against Scott Thompson, individually, and as personal representative of the estate of his mother, and Mrs. Dorothy M. Thompson; also Mrs. Martha Jane Gillispie, the daughter of the deceased, to whom her residence property, which had been mortgaged to secure the debt, was devised. In February, 1927, at the request of Scott Thompson and his brother, Robert Thompson, the bank released 10 shares of the corporate stock pledged as collateral to Robert Thompson. As we understand this was regarded as his portion of the stock bequeathed him by his mother. Robert Thompson was guardian of his sister, Mrs. Gillispie. Whether she was present when the stock was given up and joined in the request is a disputed but unimportant question. She was an unmarried infant at that time. The surrender of this stock was without the knowledge or consent of Mrs. Dorothy M. Thompson. It was then considered worth $5,000 to $8,000.

The circuit court was of opinion that both Mrs. Martha S. Thompson and Mrs. Dorothy M. Thompson were only sureties, and the bank, by its relinquishment of the pledged 10 shares of stock, had released the estate of the former and the lien on her property, as well as released the lien on Mrs. Dorothy M. Thompson's property. A personal judgment was rendered against Scott Thompson for the debt and subjected 15 shares of the stock, which he had originally owned, and 10 shares bequeathed to him by his mother, to its satisfaction, the same being ordered sold. He had made no personal defense. On her counterclaim the court adjudged that the bank restore 10 shares of the stock, with all accumu-

lated dividends, to Mrs. Martha Jane Gillispie as the devisee of her mother. The bank appeals. Mrs. Gillispie has since died but there has been a revivor against her executor.

Mr. Thompson, as the personal representative, had no power to bind his mother's estate by signing the renewal notes as surety, although it may have been in its interest and for its benefit. Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A., N. S., 1122; Hardwick v. Cotterill, 221 Ky. 783, 299 S. W. 958. But it did not operate to discharge the obligation of the original note. Stratton v. McMakin, 84 Ky. 641, 8 Ky. Law Rep. 766, 4 Am. St. Rep. 215. The chancellor, upon a final determination of the case, expressed the view that the bank had allowed Scott Thompson to renew the note individually, without binding the estate of his mother. We are of opinion that it was the intention of the parties, that is, Mr. Thompson and the bank, not to discharge the pre-existing obligation or to create a new indebtedness. It was only to execute and accept the renewal notes as evidential of the original debt. The requirement that he sign the note as personal representative, and the fact that an acceptance of him alone as obligor would have relinquished all security save only his individually owned 15 shares of the pledged stock, negatives such an intention. Banks don't do business that way. It cannot be said that it was a novation.

The editor of the annotations in 12 A. L. R. 1546, thus clearly states the rule:

"In the absence of an agreement to the contrary, the acceptance of a renewal note made or endorsed by a personal representative of the obligor in the original paper is generally held not to be a payment or novation of that paper."

Our cases so hold. Bank of America v. McNeil, 10 Bush 54; Russell v. Centers, 153 Ky. 469, 155 S. W. 1149; Mutual Ben. Life Ins. Co. v. First Nat. Bank, 160 Ky. 538, 169 S. W. 1028; Olive Hill Limestone Co. v. Big Run Coal & Clay Co., 245 Ky. 657, 54 S. W. (2d) 53.

The cause of action stated in the petition was construed by the circuit court as being upon the original note although the last renewal was set up. We shall decide the case accordingly.

Of the proceeds of the note, $10,432.91 was applied

to the payment of obligations of Scott Thompson to another bank on which his mother was surety, and to secure which the 45 shares of stock had been pledged. It appears that $2,500 of that debt had been incurred by Scott Thompson to pay off a lien on the property of his wife, Mrs. Dorothy M. Thompson. For this reason the appellant maintains that she should not be regarded as a surety but should be held as having obtained the benefit of the proceeds of the note sued on, and, therefore, bound as principal, as was the wife in Thomas v. Boston Banking Co., 157 Ky. 473, 163 S. W. 480, and other cases of that class.

Being an unmarried woman, Mrs. Martha S. Thompson was not incapacitated from signing the note or otherwise becoming personal surety for the son. There is no doubt of her status as such. As to the wife, Mrs. Dorothy M. Thompson, there is doubt; but we think the chancellor rightly concluded that she was not a principal. As a married woman, she could not enter into a contract of personal suretyship, but, having mortgaged her property for her husband's debt, she occupies the position of a surety in respect thereto. Lane v. Traders' Deposit Bank, 21 S. W. 756, 14 Ky. Law Rep. 873; Tipton v. Traders' Deposit Bank, 33 S. W. 205, 17 Ky. Law Rep. 960. She is entitled to all the rights of such an obligor and to have the lien which she placed upon her property discharged by any change in the suretyship transaction which would operate as a discharge of a personal surety. Daviess County Bank & Trust Co. v. Wright, supra; 21 R. C. L. 1003. But Mrs. Thompson was not discharged by the renewals and extensions. By its express terms the note embraced all renewals. People's State Bank v. Atwood, 212 Ky. 462, 279 S. W. 670; 50 C. J. 151. Disregarding the effect of these terms and the renewals, the mortgage lien continued until the original note was paid or statutory limitations barred its collection. New Farmers Bank's Trustee v. Blythe, 53 S. W. 409, 54 S. W. 208, 21 Ky. Law Rep. 1033; Craddock v. Lee, 61 S. W. 22, 22 Ky. Law Rep. 1651; Alexander v. West, 241 Ky. 541, 44 S. W. (2d) 518.

The relinquishment of the 10 shares of the pledged stock raises difficult questions.

As has been stated, the mother owned 30 shares of the stock. She had bequeathed 10 of those shares to each of her three children. The circuit court seems to have concluded that the stock surrendered to Robert

Thompson then belonged to his sister, Mrs. Gillispie, as her bequest. It seems to us, however, that as the mother had pledged all of her stock, the rights and responsibility of the children could not be different from hers had she survived. The personal representative had no right to consent, as he did, to the surrender and the delivery of the stock to Robert Thompson. Nor did the bank have such right. Accordingly, the surrender of a portion of that stock without the consent of one of the three owners should be regarded as a wrongful surrender of that owner's proportionate part. As Mrs. Gillispie owned one-third of the 10 shares so surrendered, the bank is liable to her for one-third of its value at the time of its surrender and no more, subject, however, to its being applied in satisfaction of the obligation of the mother's estate to the bank. The bequest to her, obviously, was encumbered by the pledge.

The next question is the effect of the relinquishment of the stock upon the liability of the estate of the mother by reason of her suretyship and her property and the liability of the property of the wife, Mrs. Dorothy M. Thompson, placed in lien as security. This court first adopted the majority interpretation or rule as to the effect of the Negotiable Instruments Act, Kentucky Statutes, section 3720b-1 et seq., on the equitable defense of release of a surety by extension of time of payment by the payee or by his voluntary surrender of collateral pledged to secure the note, namely, that there is not an entire discharge. First State Bank of Nortonville v. Williams, 164 Ky. 143, 175 S. W. 10; Elsey v. People's Bank of Bardwell, 168 Ky. 701, 182 S. W. 873. Later it was held that the relinquishment operated as a complete release. Southern National Life Realty Corp. v. People's Bank of Bardstown, 178 Ky. 80, 198 S. W. 543. modified on rehearing 179 Ky. 113, 200 S. W. 313. See 22 Kentucky Law Journal, 371, for an article styled "Extension of Time for Payment as Releasing Sureties on Note in Kentucky," by Carl Owsley, Jr. In the more recent case of Rommel Bros. v. Clark, 255 Ky. 554, 74 S. W. (2d) 933, it is held that the defense of a failure by the payee to preserve or appropriate a security held by him to the satisfaction of the note, or the relinquishment by the payee of security to the detriment of the surety, is available to and will release him pro tanto or entirely, according to the value of the lost security. Therefore, coming in harmony with the modern

trend and majority interpretation of the Negotiable Instruments Act, we now hold that the equitable defense that the payee of a note had released a part of the pledged collateral or securing lien is sustainable proportionately. The surety debtor is discharged from liability pro tanto to the extent of the value of the security or property surrendered. If the securities retained by the creditor are sufficient to satisfy the debt, the surety has not been injured in any respect and ought not be heard to complain. If they are not sufficient and the surety has been hurt thereby, he is entitled to relief upon his liability to the extent of his injury. 8 Am. Jur., Bills and Notes, Section 820; 21 R. C. L. 1053; 50 C. J. 157, 164; Annotations, 48 A. L. R. 715; 65 A. L. R. 1425; Mortgage Guarantee Co. v. Chotiner, 8 Cal. (2d) 110, 64 P. (2d) 138, 108 A. L. R. 1080, Annotations, page 1088.

We are of opinion that the release of the 10 shares of pledged stock operated to release the estate of Mrs. Martha S. Thompson and the property of Mrs. Dorothy M. Thompson only in proportion that its value bears to the entire value of all the stock and the real estate placed in lien and no more.

The judgment is reversed.

Whole court sitting, except Judge Rees.