**Mary S. AMLUNG, Appellant,**

v.

**FIRST NATIONAL LINCOLN BANK OF LOUISVILLE, Appellee.**

Court of Appeals of Kentucky.

Feb. 10, 1967.

Martin J. Duffy, Jr., Edward W. Bensinger, Louisville, for appellant.

John T. Ballantine, Odgen, Robertson & Marshall, Louisville, for appellee.

GEORGE O. BERTRAM, Special Commissioner.

Appellant instituted this action against appellee bank for return of her 297 shares of the common stock of Falls City Brewing Company. On December 9, 1960, appellant and her husband, Bertram W. Amlung, borrowed $24,109.74 from appellee, for which they executed their promissory note on the same date, in order to pay a debt owing another bank by the husband. On the same date appellant executed a pledge or hypothecation agreement pledging her 297 shares as security, together with a power of attorney in blank for the sale of the collateral if it became necessary to satisfy the indebtedness. By stipulation it was agreed that the husband at the time of the hypothecation agreement had previously incurred indebtedness at appellee bank (or a bank it merged with) in the sum of $3,000 evidenced by note dated July 7, 1958, and also $1,200 evidenced by note dated April 15, 1959. Both notes were the individual debt of the husband, and neither was included in the $24,109.74 note. On December 12, 1961, the husband executed a note for $3,200 to appellee bank, which represented consolidation of the $1,200 and $2,000 borrowed by him from appellee July 14, 1961, and on May 18, 1961, he borrowed $12,088 from appellee and executed his note for same. On February 23, 1962, he borrowed $1,500 from appellee and executed his note for same, which later was reduced by payments leaving a principal balance of $1,255. The notes for $3,000, $24,109.74 and $12,088 were consolidated on July 13, 1961, into a note for $39,109.74 executed by the husband (the record does not reflect what happened to the $88). All notes after December 9, 1960, and a new hypothecation agreement, bore the signature of appellant forged by

her husband, and all notes listed as collateral the 297 shares. We are not concerned with the forgeries in this action if the original pledge agreement authorized the additional loans on the signature of the husband.

Appellee by counterclaim seeks recovery against appellant on all notes for the total sum of $46,642.24, and for authority to sell the stock pledged as collateral.

Appellant testified at the trial that all three instruments signed by her on December 9, 1960, were so executed by her for the following reason:

"I just thought, Judge, it was a loan for my husband. I had faith in him and I wanted to help him, that was my only reason."

The terms of the pledge or hypothecation agreement provided that:

"In consideration of your making, renewing or extending a loan or loans to Bertram W. Amlung for which (297 shares of Falls City Brewing Company common stock) standing in my name and by me endorsed in blank have been tendered to you as collateral security * * * and for the purpose of enabling said borrower to obtain credit therefor, I * * * hereby expressly authorize said borrower to pledge or hypothecate all or any part of said securities for indebtedness aforesaid and all renewals and extensions thereof; and also for any and all other indebtedness of the said debtor to you, created at any time before this authorization shall have been revoked in writing, and all renewals and extensions thereof, and I waive notice of all or any such other indebtedness or extension or renewal thereof.

"Furthermore, I request that you give, or continue to give to said borrower, credit in the form of loans or renewals or extensions as aforesaid, and in consideration of all or any such credit so granted by you, I agree that all or any property

pledged or hypothecated as aforesaid, shall be subject in your hands * * * to all powers which would apply thereto by contract or otherwise if said property in fact so pledged or hypothecated stood in the name of said borrower himself and not in my name. * * *."

The trial judge by his Memorandum of Findings and Conclusions determined that:

"So, until the executed hypothecation instrument had been revoked, the bank clearly had authority under that agreement to attach that collateral to any subsequent debts of the husband. The fact that the note of July 1961 may have extinguished the obligation evidenced by the note of December 1960 would not limit the possession of the bank as far as the allocation of this collateral as security to its current account with plaintiff's husband."

A judgment was accordingly rendered in favor of appellee bank for $46,260.27 instead of $46,642.24. However, there is no cross-appeal.

■ Appellant contends the renewal note given by her husband on July 13, 1961, for a larger sum with a different rate of interest, and containing new and different provisions, operates as payment of the first note; and that where the new note and new hypothecation agreement contain the forged signature of appellant, it operates to limit the liability of the surety to the amount of the original note. We cannot agree with either contention. See Morehead v. Citizens Deposit Bank, 130 Ky. 414, 113 S. W. 501, 23 L.R.A.,N.S., 141; and Marshall's Adm'r. v. Corinth Bank & Trust Co., 226 Ky. 361, 10 S.W.2d 1076, where this Court said, "[t]he rule that a collateral security can be held or applied only upon the obligation which it was given to secure does not, however, prevent its retention for and application to the satisfaction of that obligation in any changed form."

We agree with the trial judge in his findings when he says:

(1) "It is fairly strictly held in this state that a person who has the capacity and opportunity to read the contract and is not misled as to its contents, cannot avoid the contract on the ground of mistake. Clark v. Brewer, Ky., 329 S.W. 2d 384;" and (2) "although I sympathize with the plaintiff in her plight."

Therefore, as we view it the question is simply what are the terms of the hypothecation agreement. The agreement clearly authorizes appellant's husband to pledge or hypothecate all or any part of the 297 shares as security for the indebtedness of $24,109.74 and all renewals and extensions thereof; and also for any and all other indebtedness created by him before it was revoked. The notes of $3,000 and $1,200 were signed only by Mr. Amlung prior to the hypothecation agreement. By consolidating the notes of $3,000 and $1,200 with other notes after the hypothecation agreement was executed in no wise was a debt created after the agreement. We are unable to find in the pledge agreement any authorization for appellee bank to use the security, or allow it to be used, as such for an indebtedness of appellant's husband created by him prior to the execution of the agreement. By this we mean, any prior debt that was not included in the $24,109.74 note on December 9, 1960. The including of the $3,000 and $1,200 notes in other notes executed after December 9, 1960, was not a renewal or extension of the $24,109.74 indebtedness nor were they debts created after December 9, 1960.

Applying the foregoing principles of law to the facts presented, we think the judgment should be reduced by $4,200 to $42,-060.27.

The judgment is affirmed in part and reversed in part, with directions to enter a judgment consistent with this opinion.

All concur.