In the Matter of CANTRILL CON-
STRUCTION COMPANY, Bankrupt.
COMMERCIAL BANK OF MIDDLES-
BORO, KENTUCKY, Appellant,

v.

Nolan CARTER, Jr., Trustee in Bank-
ruptcy, Appellee.

No. 19370.

United States Court of Appeals
Sixth Circuit.

Nov. 24, 1969.

Glenn Wilder Denham, Middlesboro, Ky., Denham, Ralston & Nagle, Middlesboro, Ky., on brief, for appellant.

Charles W. Rolph, Lexington, Ky., Goldberg & Lloyd, Lexington, Ky., on brief, for appellee.

Before WEICK and EDWARDS, Circuit Judges, and BROOKS * District Judge.

* The Honorable Henry L. Brooks, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

WEICK, Circuit Judge.

Commercial Bank of Middlesboro, Kentucky (Commercial) has appealed from a judgment of the District Court which affirmed an order of the Referee in Bankruptcy denying its petition for reclamation of chattel property described in a security agreement.

The facts were stipulated. On February 10, 1967, Cantrill Construction Company (Cantrill) executed a note to Commercial in the amount of $30,310.00, payable within six months, with interest at six per cent per annum. On the same day, in order to secure payment of the indebtedness, Cantrill executed and delivered to Commercial a security agreement covering certain mining equipment described therein. A financing statement was filed in the appropriate recording offices in Kentucky and Commercial obtained a valid lien on the equipment. The financing statement contained no maturity date.

On August 8, 1967, Cantrill made a payment on the original note and executed and delivered to Commercial a renewal note for the balance of the indebtedness in the amount of $20,202.00, payable in six months, with interest at seven per cent per annum. Cantrill failed to pay the note when it became due, and Commercial repossessed part of the property described in the agreement.

Shortly after the default, Cantrill filed a voluntary petition in bankruptcy. Commercial filed with the Referee in Bankruptcy a petition for reclamation of the remainder of the property covered by the security agreement. The petition was denied by the Referee. On petition for review, the District Court affirmed for the reasons stated by the Referee in his opinion and order. We reverse.

The Referee stated the reasons for denying Commercial's petition succinctly:

"The trustee's objection that the security agreement does not secure the renewal note dated August 8, 1967, presently held by the bank is well taken and should be and hereby is sustained. The security agreement shows on its face that it was *to secure a note* in the amount of $30,310.00 payable within six months. It does not purport to secure payment of any extensions or renewals of the note, or future advances. The security agreement dated February 10, 1967, expired when the note dated February 10, 1967, was marked paid. Consequently at the date of bankruptcy, there was no agreement in effect conveying to Commercial Bank of Middlesboro, Kentucky, a security interest in any property of the bankrupt." App. at 27. (Emphasis added.)

In our opinion the Referee has misapprehended the effect of the security agreement which clearly provided:

"Witnesseth: Whereas, the mortgagor is indebted to the mortgagee in the sum of Thirty Thousand, Three Hundred Ten Dollars and no cents ($30,310.00), *as evidenced by mortgagor's promissory note* of even date herewith, payable to mortgagee within Six Months (6) months after date.

"Now, Therefore, *to secure the payment of said indebtedness* as evidenced by the aforesaid note, together with six per cent (6%) per annum interest thereon from the various maturity dates of payments provided in said note. * * *" App. at 7. (Emphasis added)

The security agreement on its face secured the indebtedness. The note was merely evidence of the indebtedness. Even if the security agreement were not explicit in its language, it is hornbook law that a chattel "mortgage secures the debt, not merely the evidence of it. * * *" 15 Am.Jur.2d Chattel Mortgages § 196 (1964). It is not relevant to the instant case whether the original note was canceled. In order to determine whether Commercial still has its security, the first question which must be answered is whether the original obligation has been extinguished. The answer to this question depends on the intent of the parties when the note was renewed, *i. e.*, whether the renewal note

was taken in payment and satisfaction of the indebtedness. Kentucky law governs.

█ In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation. Porter v. Bedell, 273 Ky. 296, 298, 116 S.W.2d 641 (1938). By definition a—

> " * * * novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." Truscon Steel Co. v. Thirwell Elec. Co., 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

Intent is the essential element. The burden of proving a novation was on the Trustee in Bankruptcy.

Turning to the note, it is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is "Renewal No. 1 Orig. Amt. $30,310.00." It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this. The parties' intention was only to extend the time for payment, not to extinguish the obligation.

The fact that the interest rate was raised from 6% to 7% does not negate this conclusion. See Amlung v. First Nat'l Bank of Louisville, 411 S.W.2d 465, 467 (Ky., 1967). Commercial certainly did not intend to give up its security. See State Nat'l Bank of Frankfort v. Thompson, 277 Ky. 527, 530, 126 S. W.2d 412 (1938). The Trustee in Bankruptcy can hardly claim there was a novation because he has stipulated:

> "(4) On the 8th day of August, 1967 a payment was made on the original note and a renewal note was executed by Cantrill Construction Company to the Commercial Bank in the amount of Twenty Thousand Two Hundred Two Dollars ($20,202.00) bearing interest at the rate of seven (7) per cent per annum. There is a balance due from the Bankrupt on account of the above described transaction in the amount of Twenty Thousand Two Hundred Two Dollars ($20,202.00) with interest at seven (7) per cent from the 8th day of August, 1967."

Since there was no novation, the original obligation remains in full force.

The security interest is provided for in the Uniform Commercial Code which has been adopted by Kentucky.[1] In order to be effective, a security interest must be properly perfected.

Perfection is defined by K.R.S. § 355.-9–303(1), which provides:

> "(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in K.R.S. 355.9–302, 355.9–304, 355.9–305 and 355.9–306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches."

K.R.S. § 355.9–204(1) provides:

> "(1) A security interest cannot attach until there is agreement (subsection (3) of KRS 355.1–201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching."

In addition K.R.S. § 355.9–302(1) provides:

> "A financing statement must be filed to perfect all security interests except the following: * * *."

None of the exceptions apply in the instant case.

Applying these rules to the facts of the instant case, there was an agreement

---

1. Kentucky adopted the Uniform Commercial Code in 1962. K.R.S. Chap. 355.

between Commercial and the Bankrupt evidenced by the security agreement. Value was given in the form of a $30,310.00 loan. The debtor, Bankrupt, had rights in the collateral at all times. A financing statement was properly filed. The security interest of the Bank was perfected.

The Trustee argues, however, that there was no provision in the security agreement for a renewal or extension of the note and, because a security agreement is only effective according to its terms, § 355.9–201, the renewal note was not secured by the security agreement. This does not follow.

The Trustee relies on § 355.9–204(5), which provides:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

He contends that the execution of the new note was a "future advance" or "other value" within the meaning of the Code and, therefore, had to be specifically included within the terms of the security agreement. He relies, as did the Referee in Bankruptcy, on the cases of Safe Deposit Bank & Trust Co. v. Berman, 393 F.2d 401 (1st Cir.1968), and In re Rivet, 299 F.Supp. 374, E.D.Mich., Oct. 2, 1967. Such reliance is misplaced. We note that In re Rivet was overruled on rehearing (April 9, 1969).

The Berman case is inapposite. In that case a security agreement was executed to secure a specific debt. There was no provision for future advances. However, additional money was advanced. In affirming the finding of the Referee and the District Court that the bank had not established a lien on the property of the bankrupt to secure the subsequent obligation, the Court noted:

"If security agreements which on their face served as collateral for specific loans could be converted into open-ended security arrangements for future liabilities by recitals in subsequent notes, much needless uncertainty would be introduced into modern commercial law. In effect, notes would take on the character of security agreements." 393 F.2d at 404.

In the present case there was no "future advance" as in Berman. No new money was loaned to Cantrill. All that was done was to renew the evidence of the old indebtedness and extend the time of payment. If Berman is to apply, the renewal note would have to come within the concept of "other value" of § 355.9–204(5). Had the new note been taken in payment and satisfaction of the indebtedness, then arguably there would have been "other value." In other words, a *new obligation* would have been created, just as a distinct obligation was created in Berman by the future advances. Section 355.9–204(5) allows security agreements to cover these future, distinct obligations so long as they are specifically set forth in the agreement. However, as we have discussed, there was no novation in this case. There was, therefore, no new obligation required by § 355.9–204(5) to be set forth in the security agreement. The original obligation remained in full force, and was, of course, covered by the security agreement. It was not necessary for the security agreement to provide for an extension or renewal of the indebtedness.

Had a novation occurred, extinguishing the original obligation, the language of Berman would be particularly appropriate.

"Certainly such equities as appellant can claim here would be unavailing as against an innocent third party who had extended credit on the basis of the assumption that the July 30, 1963 security agreement was no longer effective after payment of the note it purported to secure." 393 F.2d at 404.

We are not here faced with the danger of converting the security agreement into an open-ended agreement which would take priority over unsuspecting future creditors. Potential creditors were put on notice of the existence of a security interest in the present case. A

financing statement which contained no maturity date was filed in the appropriate recording offices. Because the financing statement is undated, it is effective for five years. K.R.S. § 355.9–403(2).

The policy of the Uniform Commercial Code is merely to put potential creditors on notice of possible security interests. The Official Comments to § 9–402 of the Uniform Commercial Code make this clear:

"This Section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure. Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where other types of collateral are involved the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution."

A potential creditor of the Bankrupt would have discovered the financing statement upon examining the records in the recording office. Further inquiry would have led him to the existence of the security agreement and the renewal note. He would have known, therefore, the true state of the Bankrupt's financial situation.

Commercial has a valid security interest in the mining equipment. That interest has been perfected and, therefore, takes priority over the claim of the Trustee in Bankruptcy. K.R.S. § 355.-9–301(1) (b). There is no reason in this case to enhance the Bankrupt's estate with a "windfall." It was error for the District Court to affirm the Referee's denial of Commercial's petition for reclamation of the secured property.

We reverse and remand, with direction to grant the bank's petition for reclamation.